

U.S. Department of Justice

United States Attorney
Eastern District of New York

SDD:AAS/DMP/PB

271 Cadman Plaza East
Brooklyn, New York 11201

April 6, 2015

By Hand Delivery and ECF

The Honorable Lois Bloom
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Dilkhayot Kasimov
             Criminal Docket No. 15-95 (S-1) (WFK)

Dear Judge Bloom:

      On Wednesday, April 8, 2015, defendant Dilkhayot Kasimov is scheduled to be arraigned before Your Honor on the above-referenced superseding indictment.  For the reasons set forth below, the government respectfully submits that the Court should enter a permanent order of detention because there is a presumption of detention due to the nature of the charges, and because the defendant presents a danger to the community and a risk of flight.[1]

I.    Background

      On April 6, 2015, a grand jury in this district returned a superseding indictment charging Kasimov with attempting and conspiring to provide material support to the Islamic State of Iraq and the Levant ("ISIL"), a foreign terrorist organization, in violation of 18 U.S.C. § 2339B.

    A.    ISIL

      On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq, then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a

---

[1]    Detailed herein are a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant.  See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224. On May 15, 2014, the Secretary of State amended the designation of al-Qa'ida in Iraq to add the alias Islamic State of Iraq and the Levant as its primary name. The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham, the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. Although the group has never called itself "Al-Qaeda in Iraq," this name has frequently been used to describe it through its history.

Since 2013, ISIL has claimed credit for numerous terrorist activities, including seizing Mosul, a city in northern Iraq, and launching rocket attacks on eastern Lebanon in March 2014. These terrorist activities are part of ISIL's broader goal of forming an Islamic state or "caliphate" in Iraq and Syria.

  B. <u>The Offense Conduct</u>

Like his three codefendants, Kasimov is charged with attempting and conspiring to provide material support, including resources and personnel, to ISIL. In summary, Kasimov provided money to other members of the conspiracy for use in their support of ISIL.

Codefendant Abdurasul Hasanovich Juraboev first came to the attention of law enforcement during the summer of 2014 after he made a posting on an Uzbek-language website that propagates ISIL's ideology. In his post, Juraboev offered to engage in act of martyrdom on U.S. soil on behalf of ISIL, such as killing the President of the United States. In a subsequent interview with FBI agents, Juraboev confirmed to the agents that, if ordered to do so by ISIL, he would conduct an attack in the United States. Juraboev also confirmed that he had pledged allegiance to ISIL.

Similarly, codefendant Akhror Saidakhmetov expressed his support for ISIL on social media. For example, on or about August 4, 2014, Saidakhmetov posted a message to the same website in which he referenced a video containing footage of multiple individuals pledging allegiance to ISIL and showing mass executions by ISIL of Iraqi forces captured during ISIL's takeover of Mosul, Iraq. Saidakhmetov wrote, "Allohu Akbar I was very happy after reading this, my eyes joyful so much victory."

The investigation subsequently revealed that Juraboev and Saidakhmetov devised a plan to travel to Syria, via Turkey, for the purpose of joining ISIL and engaging in violent jihad. Juraboev and Saidakhmetov ultimately purchased airline tickets to travel from the United States to Turkey. On February 25, 2015, Saidakhmetov was arrested while trying to board a flight from John F. Kennedy International Airport ("JFK Airport") to Istanbul, Turkey. Juraboev was scheduled to leave the United States in March 2015.

Intercepted electronic communications and physical evidence revealed that Kasimov worked closely with Habibov to help fund Saidakhmetov's efforts to travel to Syria to join ISIL. In particular, Kasimov and Habibov pooled approximately $1600 for Saidakhmetov to use in Syria, and Kasimov delivered this money to Saidakhmetov at JFK Airport shortly before Saidakhmetov's apprehension. At the time of his arrest, Saidakhmetov was in possession of approximately $1600 in cash.

On February 25, 2015, Kasimov was detained on immigration charges and agreed to speak with agents. After waiving his Miranda rights, Kasimov admitted, in sum and substance, that he had delivered the money seized from Saidakhmetov and stated his belief that Saidakhmetov "might be" traveling to Syria to join ISIL. Subsequent investigation uncovered electronic communications in which Kasimov encouraged others to participate in violent jihad and in which he acknowledged his role in assisting foreign fighters travel to Syria. For example, Kasimov wrote to one person contemplating a religious education that "those pious ones are going to Gaza, Syria, or at least, to Iraq," and that "[e]ducation is not given a priority when jihad is fard-ayn [obligatory]." Later, Kasimov explained, "A pious man . . . will get the [religious] education here and take off for jihad!" In another communication, Kasimov responded to another individual's prayer for "Allah [to] help all the Muslims in the world get victory over their oppressors" with the statement, "And may Allah help young guys who bought tickets too :))".

II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The Bail Reform Act also sets forth certain offenses for which there is a presumption in favor of detention. Specifically, where a defendant is charged with certain enumerated offenses, the Bail Reform Act provides that "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). Such presumption is applicable where "the judicial officer finds that there is probable cause to believe that the [defendant] committed" any of the following offenses: "(C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a

maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. § 3142(e)(3). Section 2332b(g)(5)(B), in turn, lists a number of terrorism offenses, including 18 U.S.C. § 2339B, which carries a maximum term of 15 years' imprisonment.

The charges in the superseding indictment carry this presumption of detention, as the defendant is charged with one count of attempting to provide material support to a foreign terrorist organization and one count of conspiring to provide material support to a foreign terrorist organization, both in violation of 18 U.S.C. § 2339B. Section 2339B, in turn, is an offense specified in 18 U.S.C. § 3142(e)(3)(C). Therefore, there is a presumption that no condition or combination of conditions will permit the defendant to be released on bond.

In addition, the Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). As discussed below, all of these factors weigh heavily against pretrial release.

III.   The Court Should Enter a Permanent Order of Detention for the Defendant

As set forth above, there is a presumption that no condition or combination of conditions will permit the defendant to be released on bond. Moreover, the factors to be considered in the detention analysis show that the defendant presents both a significant danger to the community and a substantial risk of flight if released on bond. Accordingly, the Court should enter a permanent order of detention pending trial.

A.   The Nature and Circumstances of the Offense Charged

The charged offenses are extremely serious. The defendant is charged with attempting and conspiring to provide material support to ISIL, a foreign terrorist organization that is responsible for numerous acts of violence, including mass executions of Iraqi forces, as well as beheadings and an immolation of captives. The charged offenses involve efforts by the defendant to help cause the death of innocent victims by encouraging and causing others to wage violent jihad on behalf of ISIL. In particular, the charged conduct concerns the defendant's considerable efforts to provide financial assistance to Saidakhmetov in his goal of joining ISIL to wage violent jihad. Moreover, the communications recovered from the defendant's phone suggest that Saidakhmetov is not the only person the defendant urged to fight violent jihad.

In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is, among others, a crime of violence or a Federal crime

4

of terrorism. See 18 U.S.C. § 3142(g)(1). The charged offenses unquestionably fall within this category, confirming that Congress viewed these crimes as sufficiently serious to factor against release on bond.

Indeed, as set forth above, Congress recognized the seriousness of these charged offenses by specifically enumerating 18 U.S.C. § 2339B among those offenses that carry a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond. Even where a defendant can rebut this presumption, the Court is still required to give some weight to the presumption in the detention analysis, "keeping in mind that Congress has found that these offenders pose special risks" and that "a strong probability arises that no form of conditional release" will assure the defendant's return to court or adequately protect the community. United States v. Martir, 782 F.2d 1141, 1144 (2d Cir. 1986) (citation and internal quotation marks omitted).

In this case, both of the charged offenses carry a maximum sentence of 15 years' imprisonment, as well as a Guidelines range of 360 months to life imprisonment. The prospect of a lengthy term of incarceration confirms the defendant's serious risk of flight. Indeed, as the defendant has sought to help at least one codefendant illegally travel to Syria to join ISIL and encouraged others to engage in similar conduct, there is no reason to think that he would abide by any conditions of release. Instead, there is every reason to think that he will make efforts to flee from the United States so that he can avoid the prospect of a lengthy prison term.

B. The Weight of the Evidence

Not only did the defendant admit to providing Saidakhmetov with approximately $1600 to be used while fighting with ISIL in Syria, but Habibov and the defendant were captured in numerous electronic communications discussing their considerable efforts to raise money for Saidakhmetov. Moreover, as noted above, the defendant's support for violent jihad was memorialized in numerous electronic communications. Accordingly, the evidence against the defendant is extremely strong, and this factor weighs heavily in favor of a finding that the defendant is both a danger to the community and a flight risk.

C. The Defendant's History and Characteristics

The defendant's history and characteristics confirm that he is both a danger to the community and a substantial risk of flight.

As noted above, the defendant is a danger to the community because of his support for violent jihad and his assistance to and incitement of others to engage in acts of violence.

The defendant's history and characteristics also confirm that he presents a substantial risk of flight. Indeed, the defendant is a citizen of Uzbekistan who has already allegedly committed an immigration violation by working in the United States without legal authorization. Moreover, since he faces a maximum of 30 years' imprisonment, as well as an effective Guidelines range of the statutory maximum, there is no reason for the defendant to remain in the United States to face trial. Were the defendant to flee the United States, he would have access to parts of the world from which the United States has limited ability to recapture or extradite him. Accordingly, the government respectfully submits that the defendant represents a substantial risk of flight if released on bond.

IV. Conclusion

For all of the foregoing reasons, the defendant should be detained pending trial. The defendant is charged with extremely serious offenses, which each carry a presumption of detention, and faces a potential sentence of 30 years' imprisonment. The government respectfully submits that no condition or combination of conditions will assure the safety of the community, the defendant's return to court, or his compliance with the Court's directives, and the Court should thus enter a permanent order of detention pending trial.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: /s/ Alexander A. Solomon
Alexander A. Solomon
Douglas M. Pravda
Peter Baldwin
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (WFK) (by ECF and hand)

6