UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

UNITED STATES OF AMERICA,

                                  **Docket No. 15-CR-95**

 -against-

DILKHAYOT KASIMOV,

                       Defendant.
-----------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF PRECLUSION OF THE GOVERNMENT'S EXPERT TESTIMONY AND PRODUCTION OF KASIMOV'S STATEMENTS AND ALL 3500 MATERIAL

*Counsel for Dilkhayot Kasimov*
Elizabeth Macedonio
Kelley Sharkey
Abraham Rubert-Schewel

1

## INTRODUCTION

Dilkhayot Kasimov requests this Court order: (1) preclusion of government's proposed expert testimony, or in the alternative a *Daubert* hearing; (2) the government to provide specific notice of all relevant statements it intends to introduce at trial; and (3) production of all 3500 material, exhibits and witnesses to be introduced at trial.

## DISCUSSION

### A. The Government's Proposed Expert Testimony is Irrelevant and Cumulative

Defendant Dilkhayot Kasimov moves to preclude and/or limit the "expert" testimony of Dr. Lorenzo Vidino. For the reasons that follow, we respectfully submit that Dr. Vidino's testimony should be precluded as 1) it is wholly irrelevant to the issues in this trial, 2) serves only to inflame the jury, 3) any possibly relevant portions of his proposed testimony are not outside the scope of an average juror, and 4) any slight probative value of the testimony is outweighed by its prejudicial effect.

In the alternative, and at a minimum, Kasimov moves for a *Daubert* hearing to further evaluate the expertise of the Government's purported "expert witness" in the context of its relevance to the allegations alleged in the Superseding Indictment, *see Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993); *see also Kumho Tire Co. v. Carmichael*, 529 U.S. 137 (1999) (holding that the *Daubert* test is not limited only to scientific evidence and testimony but can include other areas of expertise as well), and thereafter to preclude and/or limit such testimony as a result of thereof.

On August 9, 2019, the Government provided notice, pursuant to Fed. R. Crim. P. 16(a)(1)(G), that it intends to call Dr. Lorenzo Vidino as an Expert witness during its case-in-

chief to provide background information relevant to the Islamic State of Iraq and al-Sham ("ISIS"). (Gov't Letter, dated, August 9, 2019, [hereinafter, the "Government's notice" or "Gov't Notice"] [*ECF # 354*] at 1).

As an initial matter, the Government's notice falls significantly short of the requirements of Fed. R. Crim. P. 16(a)(1)(G) which requires the Government to disclose a written summary of testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at the trial. The summary is to include the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications. The rule is designed to minimize the risk of surprise to the defense, avoid unnecessary continuances and provide the defendant with a fair opportunity to cross-examine the expert. *See United States v. Cruz*, 363 F.3d 187, 196 n.2 (2d Cir. 2004). Further, the rule provides an incentive for the Government to limit its use of experts to proper subject matters of expert testimony. *United States v. Dukagjini*, 326 F.3d 45, 56 (2d Cir. 2003).

The Government's notice alerted counsel that it expects Dr. Vidino to testify regarding the history, leadership, infrastructure and geographic bases of operation and control of ISIS during the time frame included in the Indictment, as well as the following topics:

(1) the process of radicalization,

(2) the manner and means by which ISIS and its adherents recruited followers and foreign fighters to ISIS, including within the United States,

(3) the methods by which those followers travelled to ISIS-controlled territory, including but not limited to Turkey,

(4) the role of foreign fighters, including those recruited from the United States, within ISIS's overall agenda, including but not limited to its media and public relations strategies; and

(5) specific acts of terrorism perpetrated by, or claimed by ISIS.

(Gov't Notice at 1-2).

While the history of ISIS may be interesting to some members of the jury, the proposed testimony is not necessary or relevant in deciding the issues at hand. Moreover, the Government offers no explanation with respect to the "bases and reasons" for Dr. Vidino's "opinions."

Mr. Kasimov is charged in two counts of the Superseding Indictment. Count One charges him with a conspiracy to provide material support to a Foreign Terrorist Organization ("FTO") and Count Two charges him with an attempt to do the same. Accordingly, the Government must establish the Mr. Kasimov knowingly conspired, and attempted, to provide material support or resources to an FTO.

Dr. Vidino can offer no opinion as to Mr. Kasimov's state of mind or the facts and circumstances of this case. ISIS is indeed a FTO. The government can and indeed will, establish this fact without the need to call Dr. Vidino. Therefore, the history, leadership, infrastructure and geographic bases of operation and control of ISIS during the time frame included in the Indictment are of no relevance.

To the extent that Dr. Vidino possesses some relevant expertise, his testimony should be limited to background that bares relevance to the present case, and he should not be permitted to testify to matters that are not beyond the ken of a juror. *See United States v. Castillo*, 924 F.2d 1227 (2d Cir. 1991) (reversible error for Government to utilize expert testimony on matters in which the jury was capable of understanding on its own); *United States v. Cruz*, 981 F.2d 659 (2d Cir. 1992) (reversible error for Government to use expert testimony to bolster the credibility of its fact witnesses); *see also United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) (discussing various examples of how an expert's testimony can exceed the limits of Fed. R. Evid. 702); *cf. United States v. Gutierrez*, 995 F.2d 169 (9th Cir. 1993) (trial court should not routinely admit

4

expert opinion testimony without carefully weighing testimony's probative value against possible prejudicial effect, especially when expert testimony of law enforcement officer is involved); *United States v. Scavo*, 593 F.2d 837 (8th Cir. 1979) (expert testimony must meet criterion of helpfulness expressed in Rule 702 and is subject to exclusion if its probative value is substantially outweighed by risks of unfair prejudice, confusion or waste of time).

### The Limits of Rule 702 and Rule 703

Rule 702 of the Federal Rules of Evidence requires courts to assess the reliability of expert testimony based on scientific, technical, or "other specialized" knowledge before permitting the testimony to be admitted at trial. *See Daubert v. Merrill Dow Pharmaceuticals, supra*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael, supra*, 529 U.S. 137, 141 (1999). Specifically, Rule 702 provides that where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue", testimony by "a witness qualified as an expert by knowledge, skill, experience, training or education" is permissible provided "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Generally, the decision to admit expert testimony is left to the broad discretion of the district court and will be sustained unless "manifestly erroneous." *United States v. Tapia-Ortiz*, 23 F.3d 738, 740 (2d Cir. 1994), *quoting United States v. Neresian*, 824 F.2d 1294, 1308 (2d Cir. 1987). Accordingly, the Second Circuit usually upholds the admission of testimony of law enforcement officials who claim expertise in the area of the nature and structure of organized crime families. Thus, in *United States v. Ardito*, 782 F.2d 358 (2d Cir. 1986), an organized crime prosecution, the Government introduced testimony by an FBI agent to explain such terms as

5

"captain", "capo", "regime" and "crew." In affirming the conviction in *Ardito*, the Court held that the admission of such expert testimony was proper because it "aided the jury in its understanding" of recorded conversations between the defendants. *Id.* at 363.

In subsequent decisions the Second Circuit continued to uphold the admission of expert testimony to explain the structure of organized crime enterprises and the jargon used by its members. *See United States v. Locasio*, 6 F.3d 924, 936 (2d Cir. 1993); *United States v. Feliciano*, 223 F.3d 102, 109 (2d Cir. 2000); *United States v. Matera*, 489 F.3d 115, 121 (2d Cir. 2007). Nevertheless, "some degree of discomfiture" was recognized where the expert testimony interpreted the evidence in a manner that effectively provided the Government with an additional summation. *See Neresian*, 824 F.2d at 1308*; see also United States v. Brown*, 776 F.2d 397, 401 (2d Cir. 1985) (recognizing the danger of expert testimony when its use "permits the government an additional summation by having the expert interpret the evidence"). Thus, in *United States v. Dukagjini*, 326 F.3d 45 (2d Cir. 2003), the Second Circuit cautioned prosecutors not to allow an expert law enforcement witness to "stray from his proper expert function" and serve as a "summary prosecution witness" thereby increasing the possibility that the jury would endow his testimony with "unmerited credibility." *Id.* at 53-55. Likewise, in *United States v. Lombardozzi*, 491 F.3d 61, 72 (2d Cir. 2007), where the Government called an investigator employed by the U.S. Attorney's Office who testified that the defendant was a crime family member, an assertion that may have been based upon out-of-court statements by cooperating witnesses and confidential informants, the Second Circuit expressed concern that such testimony might have exceeded the scope of the witness's expertise and raised a serious question as to whether the defendant's right to confrontation had been violated by the expert's opinion.

Similarly, in *United States v. Mejia, supra*, 545 F.3d 179 (2d Cir. 2008), the Government

6

charged the defendants with being members of the MS-13 gang, an enterprise as defined by 18 U.S.C. § 1959(b)(2), and charged further that the defendants had committed assaults with a dangerous weapon in order to maintain and increase their position within the MS-13 racketeering enterprise, that they had discharged a firearm during a crime of violence, and that they had used an explosive device during the commission of a felony. In addition to calling the assault victims and two cooperating witnesses, the Government called a police officer, Hector Alicea, over the objections of defense counsel, as an expert with respect to MS-13's "enterprise structure and the derivation, background and migration of the MS-13 organization, its history and conflicts" as well as its "hierarchy, cliques, methods and activities, modes of communication and slang". *Mejia*, 545 F.3d at 186.

Alicea's testimony in *Mejia* covered a wide variety of subjects including the history of MS-13, its presence on Long Island and in other states and countries, the colors and tattoos worn by members, hand signals used, as well as the gang's structure and membership rules. He also described some of the gang's practices which included communication with each other by telephone, the use of dues collected from members to purchase narcotics and weapons and to help members in prison, and the procurement of weapons to shoot at rival gang members. *See Mejia*, 545 F.3d at 187. When asked what the source of his information regarding the history, structure and practices of MS-13 was, Alicea asserted that he had reviewed documents, interviewed incarcerated gang members, conferred with other law enforcement officials and researched the Internet. *Id.* at 187-88.

In reversing the conviction in *Mejia*, the Second Circuit found no error in qualifying Alicea as an expert since his experience was as extensive as the agents who had been qualified to offer expert testimony in *Locasio* and *Matera*. *See Mejia*, 545 F.3d at 194. However, the

7

Court did find error with respect to Alicea's testimony regarding subjects that were well within the grasp of the average juror. For example, his testimony regarding the number of firearms that had been seized from MS-13 members, his statement that MS-13 members had been arrested for dealing narcotics, and his testimony regarding murders committed by MS-13 members, certainly did not require any expertise to assist the jurors in their understanding of such matters. *Id.* at 194-95. Nor was there any need for expertise to describe the manner in which MS-13 members traveled, assembled or communicated with each other, or how they funded their purchases of narcotics and firearms. *Id.* at 195.

In addition to the limitations of Rule 702, the Government must also be mindful not to exceed the limitations of Rule 703. Fed. R. Evid. 703 delineates the bases of opinion testimony by experts and provides as follows:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

In making a determination as to whether to admit expert testimony based upon otherwise inadmissible evidence, a District Court need not make an explicit finding that the underlying sources upon which the expert relies are trustworthy. *See Locasio*, 6 F.3d at 938. However, expert testimony is not completely exempt from the hearsay rule. *See Dukagjini*, 326 F.3d at 58. Thus, "an expert witness may rely on hearsay evidence while reliably applying expertise to that hearsay evidence, but may not rely on hearsay for any other aspect of his testimony." *Id.* Most importantly, an expert may not "simply transmit that hearsay to the jury." *Id.* at 54. Otherwise,

8

the expert would be simply "repeating hearsay evidence without applying any expertise whatsoever" and the Government would, as a result, be allowed "to circumvent the rules prohibiting hearsay." *Mejia*, 545 F.3d at 197, *quoting Dukagjini*, 326 F.3d at 58-59.

Here, absent a hearing, it is appears that it will be difficult to discern which portions of Dr. Vidino's testimony will be based on hearsay and which ones will not. What is clear, however, is that, as in *Mejia,* "at least some" of the purported expert's testimony will involve "merely repeating information he had read or heard," *Mejia*, 545 F.3d at 197. Accordingly, the Government should not be permitted to repeat the mistakes it made in *Mejia*, where the Government's MS-13 expert "did not analyze his source materials so much as repeat their contents." *Mejia* 545 F.3d at 198; *see also Castillo,* 924 F.2d at 1232 n.9 (holding that even where expert testimony is admissible under Rules 702 and 703, it is still subject to exclusion under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice).

## Objections

The Government has notified the defense that it expects Dr. Vidino to testify regarding five categories of information. We briefly examine each as follows:

### 1. The Process of Radicalization

We object to Dr. Vidino's testimony regarding the process of radicalization since it bares no relevance to the elements of the offense that the Government must prove. To that end, nothing in the Government's notice suggests that Dr. Vidino has examined the correlation, if any, between the process of radicalization and the defendant's conduct in this case. As such, we respectfully submit that the Government has failed to proffer a sufficient basis upon which Dr. Vidino's proposed testimony is relevant. Further, the government has produced limited if any

9

evidence that Kasimov was in fact radicalized. In fact, according to the government's theory, it appears his co-defendants were the primary targets and organizers of the alleged trip to Syria to join ISIS, and Kasimov was a late unexpected addition.

We object to "expert" testify regarding this category of information for two reasons: (1) it is not beyond the ken of an ordinary juror; and (2) it relates to matters that can – and likely will – be testified to by the Government's cooperating witnesses and as such it would only serve to bolster the credibility of the Government's fact witnesses. As such, the law is clear that such testimony is not the proper subject of an expert witness. *See United States v. Castillo, supra*, 924 F.2d 1227 (2d Cir. 1991); *United States v. Cruz, supra*, 981 F.2d 659 (2d Cir. 1992); *see also United States v. Mejia*, 545 F.3d 179, 194-95 (2d Cir. 2008) (holding that an expert was unnecessary for a jury to comprehend testimony regarding the number of firearms that had been seized from MS-13 members, that MS-13 members had been arrested for dealing narcotics, or that murders had been previously committed by members of MS-13; and finding reversible error to have occurred based upon the admission of such "expert" testimony).

> 2. **The Manner and Means By Which ISIS and Its Adherents Recruited Followers and Foreign Fighters to ISIS, Including Within the United States**

Since it is expected that the Government will call multiple cooperating witnesses, many if not all of whom possess first-hand knowledge of the manner and means by which ISIS recruits follower and foreign fighters, the Government cannot be permitted to bolster its fact witnesses with the testimony of its "expert" witness. *See United States v. Cruz, supra*, 981 F.2d 659 (2d Cir. 1992) (reversible error for Government to use expert testimony to bolster the credibility of its fact witnesses).

> 3. **The Methods By Which Followers Travelled to ISIS – Controlled Territory, Including But Not Limited to Turkey**

10

We object to "expert" testify regarding this category of information as such information is not beyond the ken of a juror, *see Mejia*, 545 F.3d at 195 (holding that there was no need for expertise to describe the manner in which MS-13 members traveled, assembled or communicated with each other, or how they funded their purchases of narcotics and firearms); *see also United States v. Castillo, supra*, 924 F.2d 1227 (2d Cir. 1991) (reversible error for Government to utilize expert testimony on matters in which the jury was capable of understanding on its own). Indeed one need only look at a map to realize Turkey boarders Syria.

As such, we object to this category of information under Rules 401 and 403 of the Federal Rules of Evidence, and, to the extent this Court believes the testimony is relevant and not unduly prejudicial, then we also object pursuant to *Mejia* and *Castillo*.

Further, since it is expected that multiple cooperating witnesses will be testifying for the Government with firsthand knowledge of this category of information, an expert will only serve to bolster the credibility of the Government's fact witness. *See United States v. Cruz, supra*, 981 F.2d 659 (2d Cir. 1992). Accordingly, expert testimony on this third category must be precluded since it is not necessary to enable the jurors to comprehend the allegations on their own, *see United States v. Castillo, supra*, 924 F.2d 1227 (2d Cir. 1991); *see also* Fed. R. Evid. 403, and would only serve to impermissibly bolster the credibility of the Government's cooperating witnesses, *see Cruz, supra*.

### 4. The Role of Foreign Fighters, Including Those Recruited From the United States, Within ISIS's Overall Agenda, Including But Not Limited to Its Media and Public Relations Strategies

We object to Dr. Vidino's testimony regarding the role of foreign fighters since it bears no relevance to the elements of the offense that the Government must prove at trial. As such, we respectfully submit that the Government has failed to proffer a sufficient basis upon which Dr.

11

Vidino's proposed testimony is relevant. As such, we object to this category of information under Rules 401 and 403 of the Federal Rules of Evidence.

Further, since it is expected that multiple cooperating witnesses will be testifying for the Government with firsthand knowledge of this category of information, an expert will only serve to bolster the credibility of the Government's fact witness. See United States v. Cruz, supra, 981 F.2d 659 (2d Cir. 1992). Accordingly, expert testimony on this forth category must be precluded since it is not necessary to enable the jurors to comprehend the allegations on their own, *see United States v. Castillo, supra*, 924 F.2d 1227 (2d Cir. 1991); *see also* Fed. R. Evid. 403, and would only serve to impermissibly bolster the credibility of the Government's cooperating witnesses, *see Cruz, supra*.

### 5. Specific Acts of Terrorism Perpetrated By, or Claimed By ISIS

This category serves no legitimate evidentiary value at this trial and is included merely to inflame the passions of the jury. Neither defendant is charged with any specific act of terrorism nor can they be held accountable for crimes which they are not charged. As such, we object to this category of information under Rules 401 and 403 of the Federal Rules of Evidence and as the proposed expert testimony is not necessary to enable the jurors to comprehend the allegations on their own, *see United States v. Castillo, supra*, 924 F.2d 1227 (2d Cir. 1991). To this point, the Government, in its motion for an anonymous and partially sequestered jury concedes that most "jurors will know or believe that ISIS remains operational and committed to violently attacking U.S. and other Western interests." (*ECF #* 350 at 12). Accordingly, Dr. Vidino's proposed testimony does not comport with the Rules of Evidence.

### **Defendant Requests a Daubert Hearing**

Rule 104 of the Federal Rules of Evidence provides that the District Court shall

determine preliminary questions regarding the qualifications of witnesses. *See* Fed. R. Evid. 104(a); *see also United States v. Nichols*, 169 F.3d 1255, 1263 (10th Cir. 1999) (holding that "*Daubert* challenges, like other preliminary questions of admissibility, are governed by Fed. R. Evid. 104"). The test for the admissibility of expert testimony is set forth in Rule 702 of the Federal Rules of Evidence. *See Daubert*, 509 U.S. at 587. The rule permits an expert witness "qualified ... by knowledge, skill, experience, training, or education" to testify when specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702.

In *Daubert*, the Supreme Court held that Rule 702 requires that the trial judge act as a "gatekeeper" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co.*, 526 at 141, 146-47 (clarifying that *Daubert* gatekeeping function applies to all forms of expert testimony).

"[U]nder Rule 702, the district court must make several determinations before allowing expert testimony: (1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact." *United States v. Romano*, 859 F.Supp.2d 445, 456 (EDNY 2012) (Bianco, J.), *citing, Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005).

The Court in Romano further explained:

> Under the *Daubert* standard, a court must first determine whether the expert has sufficient qualifications to testify before proceeding to the remaining factors. *See Zaremba v. General Motors Corp.*, 360 F.3d 355, 360 (2d Cir. 2004) (stating that, where the witness lacked qualifications, an analysis of the remaining *Daubert* factors "seems almost superfluous"). Specifically, under Rule 702, the Court must determine whether the expert is qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. A court should look at the totality of the witness' qualifications in making this assessment. *See, e.g., Rosco, Inc. v. Mirror Lite Co.*,

13

> 506 F. Supp. 2d 137, 144-45 (EDNY 2007) ("A court must consider the 'totality of a witness'[] background when evaluating the witness'[] qualifications to testify as an expert." (quoting 29 Wright & Gold, Fed. Prac. & Proc. § 6265, at 246 (1997))); *accord* Keenan v. Mine Safety Appliances Co., No. CV–03–0710 (TCP)(ARL), 2006 WL 2546551, at *2 (EDNY Aug. 31, 2006). In addition, the Court must ensure that the expert will be proffering opinions on issues or subject matter that are within his or her area of expertise. *See Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 80-82 (2d Cir. 1997); *see also Malletier v. Dooney & Bourke, Inc.,* 525 F.Supp.2d 558, 642 (SDNY 2007) ("Testimony on subject matters unrelated to the witness'[ ] area of expertise is prohibited by Rule 702.").

*Romano*, 859 F.Supp.2d at 456-57.

The burden of proof with respect to admissibility of expert testimony rests with the proponent of the evidence and is be examined based upon a preponderance standard of proof. *See Daubert*, 509 U.S. at 593 n.10 (citations omitted); *see also Moore v. Ashland Chemical Co.,* 151 F.3d 269, 276 (5th Cir. 1998) ("The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable."). Most importantly, however, the *Daubert* inquiry requires the Court to determine whether the expert's reasoning or methodology can be properly applied to the facts in issue, in other words, whether it is relevant. *See Daubert*, 509 U.S. at 597 (holding that the Federal Rules of Evidence assign to the District Court "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand").

Further, "with respect to whether the expert's testimony will assist the trier of fact, the Second Circuit has repeatedly emphasized that 'expert testimony that usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in apply[ing] that law to the facts before it, ... by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's

judgment for the jury's.'" *Romano*, 859 F. Supp. 2d at 457, *quoting, Nimely*, 414 F.3d at 397 (citations and additional quotation marks omitted). As such, the Government must prove that Dr. Vidino's testimony is not merely reliable and relevant, but not misleading or cumulative either. *See also* Fed. R. Evid. 403. A review of the Government's notice casts doubt on the Government's ability to carry its burden.

Finally, considering the fact that the Government intends to call multiple cooperating witnesses, those witnesses are all likely to possess the same knowledge that the Government seeks to illicit through Dr. Vidino's "expert" testimony. Even if the Government can meet its burden of establishing the reliability and relevance of Dr. Vidino's testimony, the Government will still be required to establish that his testimony will survive the limitations of Rule 403, Mejia, Castillo, and Cruz; limitations we doubt the Government will be able to surpass.

As such and to that end, we respectfully submit that a pretrial hearing should be conducted so that this Court can make a pre-trial determination regarding the admissibility and scope of Dr. Vidino's proposed testimony.

### B. Production of Kasimov's Specific Statements Intended for Use at Trial

Counsel requests the government provide the specific statement or statements it intends to introduce from Kasimov's LG Flex phone. A forensic copy, which contains multiple terabytes of evidence, is insufficient notice of Kasimov's statement pursuant to Fed. R. Crim. P. 16(A-B). This request shall apply to any future statements the government seeks to introduce, provided as parts of large data dumps, including:

- A copy of a forensic image of Kasimov's phone;
- Copies of other electronic devices obtained from Kasimov or his residence, which the government produced on August 12, 2019;

15

- Any statements taken from electronic or other devices which the government has not provided specific notice of the relevant statements it intends to introduce.

If the government fails to comply with the request to provide specific statements contained within the data dumps, defendants will, pursuant to Rule 16, seek preclusion of any such statements the government attempts to introduce without proper notice.  *United States v. Morrison*, 515 F. Supp. 2d 340, 353 (E.D.N.Y. 2007) (precluding defendant's statements after Rule 16 and other violations).

Further, counsel was not appointed to represent Kasimov until February of 2016.  Thus, counsel requests the government re-produce all "relevant excerpts" taken from Kasimov's Samsung Galaxy Note II which the government initially produced on April 21, 2015 and intends to introduce at trial.

### C. With Approximately 30 days Until Trial the Government Should Produce All Trial Materials to Avoid Further Delay

Kasimov relies on his earlier arguments in his initial motion for discovery seeking co-conspirator statements, 3500 material, exhibits and witnesses.  We are now approximately 30 days out from the start of trial, production of this material is necessary to ensure no further delay.

## CONCLUSION

Wherefore, for the above-stated reasons, Dilkhayot Kasimov respectfully submits that the testimony of the Government's proffered expert, Dr. Lorenzo Vidino, should be precluded.

To the extent that Dr. Vidino's testimony is not precluded based solely upon written submissions, Kasimov request a hearing be held to determine whether Dr. Vidino possesses the relevant expertise necessary to be qualified as an expert witness in this case, and, to the extent that it is determined that he is qualified, to determine the extent to which his testimony must be limited

in order to comply with *Mejia, Castillo, Cruz*, and Rules 401, 403, 702, and 703, of the Federal Rules of Evidence.

 Counsel also requests the production of the specific statements the government intends to introduce at trial as well as all trial witnesses and materials.

       Sincerely,

       /s/ Elizabeth Macedonio
       Kelley Sharkey
       Abraham Rubert-Schewel

17