TRULINCS 85808053 - KASIMOV, DILKHAYOT - Unit: BRO-I-C

---

FROM: 85808053
TO:
SUBJECT: ATTN: Honorable Judge William F. Kuntz
DATE: 12/02/2019 08:53:09 PM

Dilkhayot Kasimov
#85808-053
MDC Brooklyn
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, NY 11232
Criminal Docket: 15-95 (WFK)



December 2, 2019

The Honorable William F. Kuntz, II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11210

Your Honor,
Please find enclosed a copy of the supplemental briefs that consist of supplements to my rules (29) and (33) motions coupled with supplemental motion relating to motion to dismiss indictment. I'm not seeking hybrid consultation by any means your Honor. However, counsel as to date has not added the arguments to these said motions despite the fact that it was agreed upon by myself and the firm that these issues would be added.

Your Honor, as you are well aware, this is a critical stage in post-conviction where all foreseeable arguments must be preserved. Your Honor, I'm a defendant who doesn't want to endure regret and heartache based on my own negligence to argue viable issues that should have been litigated by my appointed counsel. I understand your being a District Judge and officer of the court that you can't initiate legal advice. Nevertheless, what I am requesting is that this honorable court resolve this dilemma that I've now incurred during this late juncture of my post-conviction proceedings, in a manner that the above mentioned motions are added as and considered supplemental briefs to the pre-existing motions prepared by counsel. Your Honor, if it's a hearing that should be scheduled and you deem it appropriate I implore the Court to do so.

In closing, I would like to express my deepest Gratitude to this Honorable Court for it's time and patience in reference to my above mentioned request.

Thank you,

Dilkhayot Kasimov
#85808-053

12/2/2019

TRULINCS 85808053 - KASIMOV, DILKHAYOT - Unit: BRO-I-C

---

FROM: 85808053
TO:
SUBJECT:
DATE: 12/02/2019 08:37:31 PM

United States District Court

Eastern District of New York

United States of America )
    -- v. --    )
Dilkhayot Kasimov    )    Docket No: 15-95 (S-1) (WFK)
    )
  Defendant    )

MOTION TO DISMISS INDICTMENT AND

MOTION FOR ACQUITTAL OR A NEW TRIAL PURSUANT TO RULE 29 AND 33

(SUPPLEMENTAL BRIEF)

Dilkhayot Kasimov, respectfully moves this court to dismiss the indictment against the defendant. In particular, Defendant moves the court, under rule 6(e)(3)(E)(ii), to:

1. Order the disclosure of all grand jury material that pertains to defendant;

2. Conduct, if necessary, an evidentiary hearing on whether and what circumstances the false information was presented to the grand jury in connection with the indictment of the defendant; and

3. To dismiss the indictment if it appears to the court that such a remedy is appropriate. In support thereof, the Defendant state the following:

INTRODUCTION

On April 6th, 2015, the grand jury returned a true bill of superseding indictment against the defendant, charging him with Conspiracy and Attempt to provide material support and resources to a FTO, to wit: ISIL (ISIS). According to the transcripts tendered in discovery, FBI Special Agent Megan Dolan was presented as a witness to the grand jury by the Assistant United States Attorney Alexander A. Solomon. For the reasons set forth below, this Indictment should be dismissed because the AUSA committed prosecutorial misconduct in the grand jury by introducing SA Megan Dolan's false and prejudicial testimony. One of these reasons resulted in substantial injustice to the Defendant.

LEGAL STANDARD

"Historically, (the grand jury) has been regarded as a primary security to the innocent against hasty, malicious, and oppressive persecution, it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will." Wood v. Georgia, 370 U.S. 375, 390, 8L. Ed. 2d 569,

TRULINCS 85808053 - KASIMOV, DILKHAYOT - Unit: BRO-I-C
--------------------------------------------------------------------------------

580, 82 S. Ct. 1364, 1373 (1962). The due process clause of the U.S. Constitution requires that an accused be indicted by an impartial grand jury. See, Stirone v. U.S., 361 U.S. 212, 218-19 (1960): See also United States v. Cederquist, 641 F. 2d 1347, 1353 (9th Cir. 1981) and that is incorporated in the Fifth Amendment to the United States Constitution. The Amendment commands that "no person shall be held to answer a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury."

It is true of course that prosecutors, by virtue of their position, have gained such influence over grand juries that these bodies' historic independence has been eroded. R. Cipes, J. Hall, M. Waxner, Moore's Federal Practice Para 6.02[1] at 6-19-6-23 (2d ed 1982). After all, it is the prosecutor who draws up the indictment, calls and examines the grand jury witnesses, advises the grand jury as to the law, and is in constant attendance during its proceedings. Nonetheless, there remain certain limitations on the presentation that a prosecutor may make to the grand jury. See, e.g. U.S. v. Ciambrone, 601 F.2d 616, 623 (2d Cir. 1979). In fact the gain in prosecutors' influence over grand jury is all the more reason to insist that these limitations be observed strictly. Due process considerations prohibit the government from obtaining an indictment based on known perjured testimony. See U.S. v. Basurto, 487 F.2d 781, 785 (9th Cir. 1974). Defendants usually raise this issue during or after trial. See U.S. v. Hogan, 712 F. 2d 757, 761 (2d Cir. 1983); U.S. v. Kouba, 822 F. 2d 768, 769-70 (8th Cir. 1987); U.S. v. De Rosa, 783 F. 2d 1401, 1404 (9th Cir.); U.S. v. Griffith, 756 F. 2d 1244, 1245-46 (6th Cir.) Federal Courts may dismiss an indictment for two reasons. First, a court may dismiss an indictment if it "perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding" U.S. v. Isgro, 974 F. 2d 1091-1094 (9th Cir. 1992). This is found where "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." Bank of Nova Scotia v. U.S., 487 U.S. 250, 257, 108 S. Ct 2369, 101 L. Ed. 2d. 228 (1988). Second, even if the misconduct does not rise to the level of constitutional error, " a federal court may dismiss an indictment pursuant to its supervisory powers." U.S. v. Ross, 372 F. 3d 1097, 1107 (9th Cir. 2004). The supervisory power doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." Isgro, 974 F. 2d at 1094 (quoting Larrazolo, 869 F. 2d at 1358). They are the means by which the courts "fulfill their role in the criminal justice system... [by] establishing and maintaining civilized standards of procedure and evidence." Ross, 372 F. 3d at 1107. (internal quotation marks omitted)(quoting McNabb v. United States, 318 U.S. 332, 340, 63 S. Ct. 608, 87 L. Ed. 819 (1943). Dismissal is appropriate "if it is established that the violation substantially influenced the grand jury's decision to indict." or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations." Bank of Nova Scotia, 487 U.S. 66, 78, 106 S. Ct. 938, 89 L. Ed. 2d 50 (1986)).

ARGUMENT

TRULINCS 85808053 - KASIMOV, DILKHAYOT - Unit: BRO-I-C

---

Instances of prosecutorial misconduct may warrant dismissal of an indictment especially where the prosecutor deliberately or intentionally misled the grand jury, knowingly used perjured testimony, or presented deceptive or inaccurate evidence. People v. Fassler, 153 Ill. 2d 49,58, 605 N.E. 2d 576 (1992); People v. Di Vicenzo, 183 Ill. 2d 239,257-258, 700 N.E. 2d 981 (1998). Further, the prosecutor does not have to deliberately attempt to deceive the grand jury. People v. Oliver, 368 Ill. App 3d 690, 696, 859 N.E. 2d 38 (2nd Dist 2006). Although deliberate introduction of perjured testimony is perhaps the most flagrant example of misconduct, other prosecutorial behavior, even if unintentional, can also cause improper influence and usurpation of the grand jury's role. U.S. v. Hogan, 712 F. 2d 757, 762 (2nd Cir. 1983): U.S. v. Asdrubal-Herrera, 470 F. Supp. 939, 943 (N.D. Ill. 1979).

In the instant case, a combination of various false and misleading statements or omissions, committed by the AUSA, rose to the level of prosecutorial misconduct sufficient enough to establish actual and substantial prejudice, which but for the misconduct, the grand jury would not have indicted the Defendant. People v. Oliver, 368 Ill. App. 3d 690, 697, 859 N.E. 2d 38 (2nd Dist. 2006).

Certainly, the misconduct in this case, coupled with the Brady violation created a cumulative effect of prejudice against the Defendant who is now forced to defend against an indictment based on falsehood and misleading information, instead of real evidence supported by Federal law.

The glaring example of prosecutorial misconduct occurred with the FBI SA Megan Dolan presented to the grand jury as a witness on the day of the true bill, April 6, 2015.

The indictment in question is based solely on evidence that the prosecutor knew, at the time it was presented to the grand jury, was perjured, falsified, and consistent of guesswork of SA Megan Dolan. Before the indictment was returned against the Defendant his Co-defendant Akmal Zakirov confessed to the crime and agreed to be truthful and cooperate with the government. During the interview with SA Megan Dolan Zakirov made the following statements concerning the defendant:

MD: Do you know if he (Defendant) has the same ideology as Akhror and Abror?
AZ: No... I don't think so.
MD: How do you know that?
AZ: He just looks like a regular guy and uh... he was planning to get married here, start his you know like um... make his life here in the U.S., when I talked to him.
MD: You never had any uh.. discussions about ISIS and extremists view?
AZ: No no. (See 3500-az-18 pg 31 3.11.15)

The only witness who could testify about the defendant's knowledge was another co-defendant Abror Habibov. He said he asked the defendant to deliver the money to the airport so he could pay Akhror money he owed (see 3500-AH-6). There was CHS who was involved in the case from the beginning of the investigation. When the CHS was asked about the defendant the CHS "could not recall if the defendant had been brought up in conversation." After examining all of the reports, the

- 3 -

TRULINCS 85808053 - KASIMOV, DILKHAYOT - Unit: BRO-I-C

----------------------------------------------------------------------------------------------------

prosecutor should have known that the SA Megan Dolan's claim's against the defendant were false. Nonetheless, the AUSA decided to introduce Megan Dolan's testimony to the grand jury to mislead it and get the defendant indicted. This false testimony was the sole basis for the present indictment. Also the prosecutor failed to present the exculpatory records.

The Defendant was and remains charged with conspiracy and attempt to provide material support and resources to a FTO in an indictment that was issued on April 6, 2015. In order to get this indictment instead of introducing the real evidence, the government made up false and prejudicial evidence in the following ways grand jury:

1. When AUSA asked Megan Dolan concerning the Viber messages between the defendant and Mahliyo:

Q (Asked by AUSA): Based on your training experience and knowledge of this investigation, when Kasimov refers to pious ones going to Gaza and Syria other places, or Iraq, among other places, what is he referring to?
A: Religious individuals.
Q: Is he referring to any foreign terrorist organizations in those areas?
A: Yes, he is.
Q: Can you specify?
A: ISIS in particular (3500-MD-7-000025/26)

Defendant makes the following arguments regarding this point:

a) Megan Dolan knew from the whole context of the text messages between Kasimov and Mahliyo that when Kasimov refers to pious ones going to Gaza... or other places" he was not talking about ISIS. At some point during the conversation he was talking about one particular person who was Mahliyo's boyfriend, who was in Saudi, Egypt or somewhere else, about who's location the Defendant was unsure.

b) Kasimov in his conversations, text messages (that the government had in its possession and provided to the Defendant as discovery) never mentioned ISIS or Islamic state, except in one place where he vociferously exclaimed in distaste for ISIS people as terrorists.

c) The text started with a message about going to Gaza and Palestine. The AUSA had to know these messages had nothing to do with ISIS and he had to know the testimony SA Megan Dolan elicited above, regarding the messages, was materially false and misleading based on the mere fact that the intelligence community is very aware that Gaza is not fighting grounds for ISIS and never has been.

d) Before the grand jury proceedings the FBI had interviewed Mahliyo and she said the conversation was not about ISIS. Thus, SA Megan Dolan knew these messages were not about ISIS. But in order to mislead the grand jury she gave false and misleading testimony.

2. When AUSA asked Megan Dolan about the other social media conversations she made the following statements:

Q: What did you find?
A: We found the text messages between Kasimov and another unknown individual in which they discuss young guys who bought tickets...
That 'May Allah help all the Muslims in the world get victory over their oppressors."
Q: And what did Kasimov respond?

- 4 -

TRULINCS 85808053 - KASIMOV, DILKHAYOT - Unit: BRO-I-C

----------------------------------------------------------------------------------------

A: Kasimov responded 'Amin.' And then he wrote again 'And may Allah help two young guys who bought tickets too.'
Q: Based on your training, experience and knowledge of this investigation, what does 'young guys who bought tickets' refer to?
A: Saidakhmetov.
Q: Meaning people who contribute to the purchase of Saidakhmetov's ticket?
A: Yes. (3500-md-7-000027/28)

Defendant makes the following argument regarding this point:

a) Megan Dolan inserted the wrong word "two" to make it look like the Defendant is talking about two guys who were planning to go to Turkey. (See 3500-md-7-000007) This exchange served as a crucial part of the government's evidence before the grand jury because it was direct evidence that Kasimov knew the "two young guys who bought tickets" (including Saidakhmetov) were going to fight for ISIS.

(CONTINUED ON THE NEXT PAGE)

TRULINCS 85808053 - KASIMOV, DILKHAYOT - Unit: BRO-I-C

---

FROM: 85808053
TO:
SUBJECT:
DATE: 12/02/2019 08:36:58 PM

b) Based on her training, experience, and knowledge of this investigation, Megan Dolan knew the Defendant was talking about his own plane ticket to go to Florida to see Saodat and her family in order to arrange their marriage.

c) These text messages were exchanged in 1/29/2015 and Saidakhmetov ticket was bought in 2/19/2015. At the time the Defendant had no idea about Saidakhmetov or about his ticket. He never met him nor had he ever heard about him yet. Megan Dolan knew about this. The government failed to present to the grand jury the full context of the text messages.

d) The party in the text messages was not an unknown individual as the government contends. By the time of the grand jury, the government knew that person was Saodat. In fact, the government already had interviewed Saodat concerning those messages. She confirmed that she was texting with the Defendant about his ticket and trip to Fl. She confirmed it was not about Saidakhmetov.

e) The part of the texts which read, "May Allah help all the Muslims in the world to get victory over their oppressors" was introduced to inflame the Defendant. In fact, Saodat informed the government it was about some event where some Muslims in the world were wronged by oppressors like Bashar al Assad.

This entire colloquy and theory, however, was based entirely off of knowingly false testimony and false translations of Kasimov's statement. After receiving 3500 material, and shortly before trial, defense counsel approached the government with its concerns about an exhibit the government intended to introduce including the text exchange with " the unknown individual" who was actually know to the government as Saodat Rustamiy.1 Defense counsel expressed that it had interviewed Saodat, who was a young Muslim woman living in Florida, and she had stated that the text exchange referenced Kasimov visiting her, not the travelers to ISIS.

The government, in response to defense counsel's inquiry, provided on September 15, 2019, (one day before the start of trial) a 302 from an interview with Saodat. The interview was dated March 26th. 2015, ten days before Agent Dolan testified in the grand jury.

3. When AUSA asked Megan Dolan about the phone call between Habibov and the Defendant she the following statements:

Q: In sum and substance, what was the nature of these communications?

A: He was trying to raise money for Saidakhmetov to go over to Syria, and also find connections over there for him to meet with them.

Q: When you say 'over there', are you referring to Turkey or to Syria?

A: To Turkey (3500-MD-7-000019/20)

After a few minutes during the grand jury proceedings when she was asked the same question again she said, "over there

Case 1:15-cr-00095-WFK Document 438 Filed 12/05/19 Page 8 of 13 PageID #: 3302

TRULINCS 85808053 - KASIMOV, DILKHAYOT - Unit: BRO-I-C
--------------------------------------------------------------------------------

refers to Syria." This directly contradicts the above. In fact, Habibov was asking the Defendant about educational connections in Turkey who could help Saidakhmetov with schooling (trial tr. 347). Habibov and the Defendant had other discussions prior to that about educational and religious connections in Turkey (see gov.exh.-57 messages 1471-1482). Megan Dolan made inconsistent and speculative statements that amount to perjury.

The combination and cumulative effect of all of these abuses has been to deny the Defendant of his constitutional right to a meaningful, independent, and dispassionate assessment of whether there is probable cause to hold him for the crime charged in the indictment.

Defendant submits that it is the responsibility of the Court to require the government to disclose the evidence it presented to the grand jury, and particularly whether it included this admittedly false evidence in that presentation.

The Court has the power to compel this disclosure under Fed. R. Crim. P. 6(e)(3)(E)(ii): The Court may authorize disclosure -- at a time, in a manner, subject to any other conditions that it directs -- of a grand jury matter... at the request of a defendant who shows that grounds may exist to dismiss the indictment because of a matter that occurred before the grand jury.

If the Court's inquiry reveals the government did present the false information, the Court must then determine whether it resulted from a constitutional violation (that is, the knowing presentation of false information.) In that event, Defendant would be entitled to dismissal of the indictment without having to make a showing of harm.

Even if the violation was unintentional or non-constitutional, the Court should still dismiss if the violation substantially affected the grand jury's decision to indict or if there exists a grave doubt whether the decision to indict was free from the substantial influence of the false information. (See Bank of Nova Scotia v. U.S., 487 U.S. 250,256, 108 S. Ct. 2369, 101L. Ed. 2d 228 (1988))("dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict." or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations").

The inconclusive nature of the other evidence in this case increases the likelihood that the false evidence was presented and that , even if presented by mistake, that false evidence was unduly persuasive.

(CONTINUED ON THE NEXT PAGE)

TRULINCS 85808053 - KASIMOV, DILKHAYOT - Unit: BRO-I-C

----------------------------------------------------------------------------------------

FROM: 85808053
TO:
SUBJECT:
DATE: 12/02/2019 08:54:08 PM

MOTION FOR ACQUITTAL OR A NEW TRIAL PURSUANT TO RULE 29 AND 33

ARGUMENT

1. The government failed to satisfy its burden of proof of demonstrating that the Defendant did knowingly and intentionally conspire and attempt to provide material support and resource, including services and [individuals] as personnel, to a FTO to wit: ISIL (ISIS)

a. The Government failed to prove that the Defendant became a member of the conspiracy knowingly and willfully.

Mr. Kasimov's conviction on Count 1 must be reversed because insufficient evidence supported the jury's verdict that Mr. Kasimov was a member of the conspiracy. In fact, the evidence showed that the Defendant was not a member of the conspiracy. Similarly, Mr. Kasimov's conviction on Count 2 must also be reversed as each relies on the elements of both charges "knowledge and intent".

In order for the Defendant to be guilty of conspiracy to provide material support and resources to a FTO, the government must prove each of the following elements beyond a reasonable doubt:

Firstly, that a conspiracy to provide material support to a FTO existed; and

Secondly, that the Defendant knowingly and intentionally became a member of the conspiracy.

There is no debate that Abror Habibov was a sole fact witness to the claim that the Defendant was a member of the alleged conspiracy. Here, the testimony of Mr. Habibov and the evidence at trial showed that Mr. Kasimov wasn't a member of the conspiracy. Mr. Habibov testified that Mr. Habibov "was a member of a group of people who were raising money to help fighters in Syria" (tr-270). In fact, Mr. Habibov had a seminal role in the group. His role was "to remind the individuals and members of the 'Tea Party' (the name of the group that was raising money) to pay their dues on time." (tr-270) Because of his key role in the group, Mr. Habibov knew the identities of all the members of the 'Tea Party' (tr. 270-271)

Mr. Habibov's testimony proved that the Defendant was not a member of the Tea Party conspiracy (tr-276). Because, Mr. Habibov had a high-ranking position in the leadership of the Tea Party conspiracy as chief fund raiser whose job was to remind all members to donate. He would be in the best position to know whether the Defendant was a member of the Tea Party conspiracy. Furthermore, the government failed to introduce any other evidence to prove that the Defendant was a member of the Tea Party conspiracy.

Thus the government's theory of Mr. Kasimov's participation in the alleged conspiracy was totally undermined by the evidence and particularly by the uncontroverted testimony of the government's own key witness. As a sole fact witness testified that

TRULINCS 85808053 - KASIMOV, DILKHAYOT - Unit: BRO-I-C
--------------------------------------------------------------------------------

the Defendant was not a member of the conspiracy the government tried to prove the knowledge and intent by introducing other evidence. But the evidence that the government introduced is nothing but speculation and inconsistent statements.

b. The government failed to prove the elements of the charges against the Defendant, "knowledge and intent".

Mr. Habibov testified that some people contributed to the Tea Party not knowing that it was going to support ISIS (tr-406). So that means to collect money, Mr. Habibov was telling different stories to different people about the purpose of the contribution. In other words he was lying in order to collect more money. Mr. Habibov testified that he had benefitted from this practice (tr-412). For example, Mr. Habibov and other leaders of the Tea Party conspiracy were telling those people to contribute for helping widows and orphans in Syria (tr-406). In the case at hand, Mr. Habibov was talking about Mr. Saidakhmetov going to Turkey to Imam Abdullah Burhary school (tr-347, exh-114) which is an Islamic school. Particularly, the evidence shows that Mr. Habibov and the Defendant had conversations about Islam Nuri newspaper and finding connections (acquaintances) in Turkey for educational purposes. (Exh-57 messages: 1470-71-73-78-81), in order to get Islamic books to distribute to community of Uzbek people in the U.S. as a good deed. (Footnote: Islam Nuri newspaper = www.islamnuri.com, they have nothing to do with ISIS or other terrorist groups. These messages show the Defendant's state of mind regarding good deeds).

Mr. Habibov also testified that he was very careful to make sure to protect their plan to be secret and anybody who is not a member of the Tea Party conspiracy does not find out about the purpose of the contribution (tr. 354/16-22). Specifically, regarding the Defendant, Mr. Habibov says to Mr. Saidakhmetov, "I will give your phone number to a brother (the Defendant). He is already there. He will wait for you at the airport or will get in touch with you. God willing, our case will be solved. Eh dear Akhror don't tell anyone about this business between you and me."(Exh-118). In fact, when the defendant arrived to Airport to give the money Mr. Saidakhmetov didn't say anything about their plan. In addition, there was CHS involved in the case (Tr-87, Tr-114-126). All the conversations in Airport terminal was taped by the CHS(Exh-20T). The tape records show that Mr. Saidakhmetov followed the instruction of Mr. Habibov not to tell anyone about the business between them and didn't say anything about the conspiracy to the defendant. On the other hand the CHS tried to get some information from the defendant for his records and had some conversation with the defendant. But the defendant didn't say anything that shows that he had knowledge of the conspiracy(Exh-20T).

Mr. Habibov and the other members of the conspiracy who knew about the purpose of the contribution were talking on the phone about who is contributing and also mentioning the list of the contributors. (Tr-319, Exh-124T, Exh-103T, Exh-104T) In 2/19/15 1:39 PM in a recorded phone call Mr. Habibov told to co-conspirator Akmal Zakirov "I will collect from the guys here. I told the guys."(Exh-103T).

In 2/19/15 1:46 PM in a recorded phone call Mr. Habibov talks to co-conspirator Azizjon Rakhmatov. During the

- 9 -

TRULINCS 85808053 - KASIMOV, DILKHAYOT - Unit: BRO-I-C

------------------------------------------------------------------------------------

conversation Mr. Habibov mentions the names of the guys from whom they are collecting money. Mr. Habibov says "There is Furkat, Firdaus, small Akmal then Brother Avaz, Alisher."(Exh-104T).

During none of the conversations defendant's name was mentioned. Mr. Habibov testified "Before 2/19/15 he had talked with the defendant and the defendant indicated that he would contribute to fund that travel" (Tr-306). If the defendant agreed to fund that conspiracy then why his name is not being mentioned?

In 2/19/15 4:00 PM the defendant texted Mr. Habibov asking when should he give the money (Exh-165). The government alleges the defendant is so willing to contribute money so he him self reached Mr. Habibov. In 2/23/15 Mr. Habibov and Azizjon Rakhmatov had another phone call. Again they had a conversation about the "business" (Exh-109T). Again Mr. Habibov says he talked to guys and mentions the names of people who is contributing. Again the names Firdavs, Furqat, Akmal were mention. And again the name of the defendant was not mentioned (Exh-109T). It is very strange that Mr. Habibov is not mentioning the defendant's name in any phone calls with Mr. Rakhmatov and Mr. Zakirov. (Mr. Rakhmatov and Mr. Zakirov are co-defendants who pleaded guilty to the charges in indictment). Mr. Habibov testified that some people contributed to the tea party conspiracy not knowing that it was going to support ISIS (Tr-406). All of these evidence shows the defendant was one of those people who contributed without knowing the real purpose and without being a member of the tea party conspiracy. That's why Mr. Habibov doesn't even talk about the defendant to other members of the tea party. To prove if the defendant knew that Mr. Saidakhmetov was going to Syria to fight for ISIS they asked the sole fact witness very specific question, if Mr. Habibov said to the defendant that Mr. Saidakhmetov was going to Syria to fight or going to Syria to fight for ISIS. Mr. Habibov said "I do not remember. I may have said ISIS. But I do remember saying Saidakhmetov was going to Syria to fight."(TR-289). It is astonishing that the government's sole fact witness could not remember the most important fact of the case. In Syria there was and still is civil war. And at the time of arrest different groups were fighting each other(Tr-91, Tr-222). For example, Because Bashar al-Assad Regime was slaughtering its own people, it caused many people to try and do something to help people in Syria (Tr-227-228). "Going to Syria to fight" could mean Mr. Saidakhmetov was going to fight against Bashar al -Assad regime. Or even he could be going to fight against ISIS with Kurdish Forces. The testimony of the sole fact witness cannot prove the main fact in the case beyond reasonable doubt.

All of these evidence demonstrates that there is simply no validity to the Government's theory as to the money the Defendant provided as being evidence of his knowledge of the conspiracy. The government introduced all contradictory evidence. As a result the jury convicted the defendant on a basis of pure speculation.

"The statute (2339B) should be interpreted to require that the government proved that the donor knew the organization was so designated. In addition, the First Amendment's right of association requires that the government prove that the donor in

TRULINCS 85808053 - KASIMOV, DILKHAYOT - Unit: BRO-I-C

----

making the donation intended to further the terroristic activities of the organization." (The mens REA for the crime of providing material resources to a FTO. Randolph N. Jonakait 2004). And the person intends when he knows. If the Defendant was not a member of the conspiracy and didn't know about the plan then he is innocent. The government failed to prove beyond a reasonable doubt the elements of the charges.

Respectfully submitted,

Dilkhayot Kasimov, 12/2/19.

From: Dilkhayot Kasimov
#85808-053
MDC Brooklyn
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, NY 11232



Legal mail

To: The Honorable William F. Kuntz, II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11210