1

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------x
                                        15-CR-95(WFK)
 3   UNITED STATES OF AMERICA,
                                        United States Courthouse
 4           Plaintiff,                 Brooklyn, New York

 5           -against-                  September 9, 2019
                                        2:30 p.m.
 6   DILKHAYOT KASIMOV,

 7           Defendant.

 8   ------------------------------x

 9           TRANSCRIPT OF CRIMINAL CAUSE FOR ORAL ARGUMENT
               BEFORE THE HONORABLE WILLIAM F. KUNTZ, II
10                  UNITED STATES DISTRICT JUDGE

11   APPEARANCES

12   For the Government:        UNITED STATES ATTORNEY'S OFFICE
                                Eastern District of New York
13                              271 Cadman Plaza East
                                Brooklyn, New York 11201
14                              BY:  DOUGLAS M. PRAVDA
                                     DAVID K. KESSLER
15                                   MATTHEW HAGGANS
                                Assistant United States Attorneys
16
     For the Defendant:         ELIZABETH E. MACEDONIO, P.C.
17   Dilkhayot Kasimov          40 Fulton Street – 23rd Floor
                                New York, New York 10038
18                              BY:  ELIZABETH E. MACEDONIO, ESQ.

19                              KELLEY J. SHARKEY
                                26 Court Street – Suite 2805
20                              Brooklyn, New York 11242
                                BY:  KELLEY J. SHARKEY, ESQ.
21

22

23

24

25
```

```
 1                          LORD & SCHEWEL
                            233 Broadway - Suite 2220
 2                          New York, New York 10279
                            BY:  ABRAHAM RUBERT-SCHEWEL, ESQ.
 3

 4   Attorney for Defendant:  LAWRENCE MARK STERN
     Azizjon Rakhmatov        100 Hudson Street, #6A
 5                            New York, New York 10013
                             BY:  LAWRENCE MARK STERN, ESQ.
 6

 7   Also Present:            ERIKA LOPEZ, PARALEGAL

 8

 9   Court Reporter:          LINDA D. DANELCZYK, RPR, CSR, CCR
                             Phone:  718-613-2330
10                            Email:  LindaDan226@gmail.com

11
     Proceedings recorded by mechanical stenography.  Transcript
12   produced by computer-aided transcription.

13

14

15                     *     *     *     *     *

16

17          (In open court.)

18          THE COURTROOM DEPUTY:  All rise.

19          The Honorable William F. Kuntz, II is now presiding.

20   Criminal cause for oral argument, Docket Number 15-CR-95,

21   U.S.A. versus Kasimov.

22          Counsel, please state your appearances for the

23   record, and spell your first and your last names for the court

24   reporter.

25          MR. KESSLER:  Good afternoon, Your Honor.  David
```

PROCEEDINGS                              3

1    Kessler, D-A-V-I-D, K-E-S-S-L-E-R, for the government.  I'm

2    joined by my colleague, Matthew Haggans, M-A-T-T-H-E-W,

3    H-A-G-G-A-N-S, and a paralegal Erika Lopez, E-R-I-K-A,

4    L-O-P-E-Z.  And we will momentarily be joined by Doug Pravda.

5               THE COURT:  Good afternoon.  You may be seated.

6               MR. KESSLER:  Thank you.

7               THE COURT:  And you may be seated in the public,

8    gentlemen, as well.

9               MS. MACEDONIO:  Good afternoon, Your Honor.

10   Elizabeth Macedonio for Mr. Kasimov.  E-L-I-Z-A-B-E-T-H,

11   M-A-C-E-D-O-N-I-O.

12              THE COURT:  Good afternoon, Ms. Macedonio.  Please

13   be seated.

14              MS. SHARKEY:  Good afternoon, Your Honor.  Kelley

15   Sharkey, K-E-L-L-E-Y, S-H-A-R-K-E-Y for Mr. Kasimov.

16              THE COURT:  Good afternoon, Ms. Sharkey.  Please be

17   seated.

18              And to your right is the interpreter.

19              Would you state your name, sir.

20              MS. SHARKEY:  No, this is my colleague.

21              THE COURT:  It's your colleague.  Okay.

22              MR. RUBERT-SCHEWEL:  Abraham Rubert-Schewel,

23   A-B-R-A-H-A-M; last name R-U-B-E-R-T, hyphen, S-C-H-E-W-E-L.

24              THE COURT:  Thank you.  You may be seated as well.

25              And do we have an interpreter, and do we need an

PROCEEDINGS                        4

1   interpreter?

2          MS. MACEDONIO:  No, Your Honor, we do not have an

3   interpreter.  I conferred with Mr. Kasimov, and he has agreed

4   to go forward for today's purposes without the assistance of

5   an interpreter.

6          And I would add that counsel has been able to

7   communicate with Mr. Kasimov without the assistance of an

8   interpreter.

9          THE COURT:  Thank you.

10          Is that acceptable to the government?

11          MR. KESSLER:  Yes, Your Honor.

12          THE COURT:  All right.  Thank you.

13          I see that Mr. Pravda has arrived.  Thank you.

14          Would you spell your name for the record, sir?

15          MR. PRAVDA:  I will, Your Honor.  My apologies.  I

16   spend out to use the restroom.

17          THE COURT:  I understand.  I will not inquire

18   further.

19          MR. PRAVDA:  I knew the exact moment the Court would

20   come down.

21          Douglas Pravda, D-O-U-G-L-A-S, P-R-A-V-D-A.  Thank

22   you, Your Honor.

23          THE COURT:  Thank you, sir.  Please be seated.

24          We're here on the oral argument in the case United

25   States versus Juraboev, 15-CR-95, for the remaining defendant,

PROCEEDINGS                          5

1    Mr. Kasimov.  The defendant who is present is in currently in

2    custody.

3             The background of the action is as follows:

4             On May 9th of 2016, the United States of America

5    filed the third superseding, which I will refer to as the S3

6    indictment in this action, which named the following

7    defendants:  Mr. Akhror Saidakhmetov, Mr. Abror Habibov,

8    Mr. Azizjon Rakhmatov, Mr. Akmal Zakirov, and Mr. Kasimov.

9             The defendants, Saidakhmetov, Habibov, Zakirov and

10   Rakhmatov have all pled guilty in the action.

11            The defendant, Mr. Juraboev, was not named in the S3

12   indictment because he pled guilty on August 14th of 2015,

13   before the date of the S3 indictment, and this Court sentenced

14   him to a term of 180 months of incarceration on October 27th

15   of 2017.

16            The S3 indictment charges the defendant with

17   conspiracy to provide material support to a foreign terrorist

18   organization, known as an FTO, and attempt to provide material

19   support to a foreign terrorist organization.

20            Trial is currently scheduled to commence a week from

21   today, September 16th, 2019.

22            Both the defendants and the government have filed

23   several motions *in limine*, and the Court's scheduled oral

24   argument on the motions for today, September 9th, 2019 at

25   2 p.m.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                6

1          Although the motions, except the defendant's motion

2    for discovery, was scheduled to be fully briefed on or before

3    August 30th of 2019, the parties have continued to file motion

4    papers since that time and the Court has, of course, reviewed

5    them.

6          Below is a list of the motions that have been

7    briefed for the Court's consideration.

8          Filed by codefendant Rakhmatov, and joined by the

9    defendant:  One, a motion to dismiss Counts One and Two filed

10   on ECF number 326 on 6/27/2019, and a response filed by the

11   government on ECF number 362, 8/16/2019.

12         Filed by the government, motion to admit statements

13   as to defendant, ECF number 328 filed on 6/28/2019.

14         A sealed response filed by the defendant, ECF number

15   359 filed 8/14/2019.

16         A response in support filed by the government, ECF

17   number 373, filed 8/30/2019.

18         Motion *in limine* to preclude entrapment and

19   derivative entrapment defense, ECF number 348, filed 8/2/2019.

20         Motion *in limine* for protective order regarding 3500

21   material and *Giglio* material, ECF number 349, filed 8/2/2019.

22   Granted on 9/3/2019 at ECF number 382.

23         Consent motion for a protective order, ECF number

24   381, filed 9/3/2019, granted on 9/4/2019, ECF number 386.

25         Motion for an anonymous and partial sequestered

PROCEEDINGS                                    7

1    jury, ECF number 350, filed 8/2/2019.

2              Response filed by defendant, ECF number 353, filed

3    8/9/2019.

4              Response in support filed by the government, ECF

5    number 375, filed 8/30/2019.

6              Notice of intent to call expert witness, ECF number

7    354, filed 8/9/2019.

8              A motion to exclude expert testimony to produce

9    statements and 3500 material, ECF number 360, filed 8/15/2019.

10             Response in opposition filed by the government, ECF

11   number 376, filed 8/30/2019.

12             Supplemental notice of government's intention to

13   call expert witnesses, ECF number 379, filed 8/30/2019.

14             Filed by the defendant, I note the sealed motion to

15   suppress FISA evidence, ECF number 336, filed 7/9/2019.

16             A sealed opposition filed by the government,

17   including classified information, ECF number 361, and in the

18   SCIF filed 8/16/2019.

19             Second motion for discovery and other relieve, ECF

20   number 337, filed 7/22/2019.

21             A response filed by the government, ECF number 355,

22   filed 8/9/2019.

23             Further response filed by the government, ECF number

24   362, filed 8/16/2019.

25             Next, motion *in limine* and seeking other relieve,

PROCEEDINGS                                    8

1    ECF number 347, filed 8/2/2019.

2              Next, motion for release of *Brady* material, ECF

3    number 371, filed 8/30/2019.

4              A response in opposition filed by the government,

5    ECF number 385, filed 9/3/2019.

6              On August 30th of 2019, the government and defendant

7    also filed their respective proposed jury instructions,

8    verdict form, and *voir dire*.  See ECF numbers 374, 377, 378.

9              The government also filed its proposed witness list.

10   See ECF number 380.

11             Are there any other documents that the parties would

12   like to call to the Court's particular attention at this time?

13             I will note that the Court has received the

14   government's letter filed on ECF of August 16th with respect

15   to the change in plea proceedings.

16             The Court has received the motion to suppress pen

17   register and trade cell cite information, telecommunication

18   records, and all other data and information obtained from

19   defendants clothes and carrier that have been filed by

20   Mr. Lawrence Mark Stern and Mr. James Neuman.

21             The Court has received and reviewed the

22   September 4th, 2019 letter from the United States Government

23   concerning Rule 16 discovery, and the September 5th, 2019

24   letter from the government concerning pretrial disclosures

25   produced pursuant to stipulations to protective orders entered

PROCEEDINGS                                    9

1    by the Court.

2              From the government, anything else I should refer to

3    before we get started on the argument?

4              MR. PRAVDA:  No, Your Honor.

5              THE COURT:  From defense counsel?

6              MS. MACEDONIO:  No, Your Honor.

7              THE COURT:  Okay.

8              I'm going -- we'll take you later, Mr. Stern.

9              Okay.  Miss Macedonio, you seem to have the lion's

10   share and, Ms. Sharkey, of the motions.  I'm happy to have you

11   start wherever you would like to start, or if you would prefer

12   to have the government start, you can have the government

13   start and take the motions in whatever order you wish.

14             How would you like to proceed?

15             MS. MACEDONIO:  We can start, Your Honor.

16             THE COURT:  Okay.

17             MS. SHARKEY:  Judge, we've split up the different

18   motions, so with the Court's permission, we will be addressing

19   different topics, if that's acceptable.

20             THE COURT:  Of course.

21             MS. SHARKEY:  Okay.  So I'm addressing the issue of

22   discovery and *Giglio* compliance.

23             As Your Honor noted in your fulsome recitation of

24   the motions filed in this case, there has been a lot of back

25   and forth as to requests by counsel responses, agreements,

PROCEEDINGS                                    10

1   some disagreements.

2              The Court should know that there has been a

3   productive off-the-record conversation with the government and

4   defense counsel, and it's been pretty cooperative.

5              There are some failures of agreement, and I think

6   I'll just spend my time briefly addressing those.

7              THE COURT:  Take your time.

8              MS. SHARKEY:  Your Honor, in the discovery motion

9   dated -- that the Court mentioned, dated August 30th, counsel

10  memorialized requests concerning *Brady* issues and Rule 16

11  issues that we believe the government has not complied with.

12  This also includes *Giglio* motions.

13             Directing the Court to page 2 of that, counsel

14  identified a series of bullet points -- by a series of bullet

15  points, excuse me, information that we have not received from

16  the government concerning the cooperating witnesses in this

17  case.

18             And we believe that not only are we entitled to

19  them, but we've received them from -- in different

20  prosecutions right up to trial.

21             Specifically, Judge, we were -- we requested the

22  immigration charges, warrants, and investigations, including

23  the A-File of the two cooperating witnesses.  Both of those

24  witnesses were defendants on the case before they became

25  cooperators.

PROCEEDINGS                              11

1          THE COURT:  Just so the record is clear, would you

2     state their names?

3          MS. SHARKEY:  Sure.

4          ██████████████████████.

5          THE COURT:  Got it.  Go ahead.

6          MR. PRAVDA:  Your Honor --

7          THE COURT:  No, no, let her finish.

8          We're going to let them argue and then --

9          MR. PRAVDA:  Well, I would like to object to placing

10    the names of the cooperating witnesses on the record, Your

11    Honor, especially in the presence of counsel for a defendant

12    who had pleaded guilty, and whose client is not entitled to

13    know which codefendants are cooperating.

14          There is nothing to prevent that defendant from

15    sharing the name of the cooperating witnesses of other

16    individuals at the MDC, and those cooperating witnesses might,

17    therefore, face retaliation for their cooperation.

18          THE COURT:  Are we going to trial next week, right?

19          MR. PRAVDA:  Yes, we are.

20          THE COURT:  And at that point is it going to be

21    known who the cooperating witnesses are to the world when you

22    go to trial, Mr. Pravda?  Or is that going to continue to be

23    something that people won't know?

24          MR. PRAVDA:  At that time their identities would be

25    public, but not between now and then.

PROCEEDINGS                                12

1          THE COURT:  Okay.  Well, all due respect, I'm going

2   to let them argue.

3          I'm going to ask you to try to be as discreet as you

4   can.  I did ask for the names.  So if you want to request that

5   that portion of the record be sealed, I have no problem with

6   having the names under seal.

7          Any objection to that?

8          MS. SHARKEY:  No objection.

9          THE COURT:  All right, so we'll put that portion of

10  the record.  And the only people that I see in the courtroom

11  are Mr. Stern and Mr. Rucker, other than court personnel and

12  the parties, so we're going to keep that under seal.

13         And I don't think it's any news to the people who

14  are sitting in the public gallery, but in any event, we'll

15  have that portion of the record under seal.

16         Does that satisfy you, Mr. Pravda?

17         MR. PRAVDA:  If by being "under seal" means that

18  Mr. Stern is not allowed to further share that information --

19         THE COURT:  All right, Mr. Stern, I'm directing you

20  you're not allowed to further share that information.  And

21  that will be part of the order of the Court.

22         Does that satisfy you, Mr. Stern?

23         I'm sorry, Mr. Pravda, does that satisfy you?

24         Does that satisfy you, Mr. Pravda?

25         MR. PRAVDA:  Yes, Your Honor.

PROCEEDINGS                                    13

1          THE COURT:  Okay.

2          Does that satisfy you, Ms. Sharkey?

3          MS. SHARKEY:  No objection.

4          THE COURT:  Okay, fine.  That's how we'll do it.

5          All right, continue.

6          MS. SHARKEY:  So, Your Honor, concerning the two

7   cooperating witnesses, both of them are from Uzbekistan and

8   would have had to have filed immigration papers to enter the

9   United States.

10          In addition, both of them are in violation of

11   immigration laws of the United States, and we are requesting

12   that the Court direct government to provide defense counsel,

13   prior to the opening statements on this case, the warrants,

14   the investigations, the A-File, and other applications for

15   relief from removal.

16          THE COURT:  Okay, what is your response to that

17   request prior to trial?

18          MR. PRAVDA:  Your Honor, the A-Files that are the

19   subject of that request are not in the possession of

20   prosecution team.  Counsel for the defendant just raised that

21   with the government before Your Honor entered the courtroom,

22   and we said that we would take that into consideration.

23          We would like the opportunity to research whether or

24   not there's actually an obligation upon the government to

25   provide that material when it's not in the possession of the

PROCEEDINGS                          14

1    prosecution team.  So we'd like to do that and then be able to

2    respond.

3              THE COURT:  What is your response to their response,

4    Ms. Sharkey?

5              MS. SHARKEY:  My response to that is I routinely

6    receive the A-File on witnesses testifying.  I had a case in

7    front of Judge Korman where it was a matter of course that the

8    A-File was produced to counsel prior to opening statements.

9              The A-File typically -- I shouldn't say "typically".

10   The A-File, in my experience, with individuals who have run

11   afoul of our laws in the United States are recitations by

12   those individuals justifying or requesting reasons for

13   entrance or continued presence in the United States.

14             THE COURT:  In Korman's case, for example, was it

15   produced under seal, or was it produced?

16             MS. SHARKEY:  It wasn't produced under seal.

17             THE COURT:  It was not produced under seal.

18             MS. SHARKEY:  And it was from a cooperating witness.

19             THE COURT:  All right.  How much time do you think

20   you need, Mr. Pravda, to either advise the Court that you have

21   complied with Ms. Sharkey's request or that you're not going

22   to comply with Ms. Sharkey's request, and then I will make the

23   ruling.

24             I know we're scheduled to have another status

25   conference in this case on Thursday; is that right?  Is that

PROCEEDINGS                    15

1   correct?

2           MS. SHARKEY:  Yes, Your Honor.

3           MR. KESSLER:  Yes.

4           THE COURT:  All right.  So let's just say we'll

5   leave it at this.

6           Come Thursday, you will advise Ms. Sharkey and

7   Ms. Macedonio as to whether or not you're going to comply with

8   the request for the A-File.

9           If you're going to comply with it, that's fine, I

10  won't have to rule; and if you're not going to turn it over,

11  then I will rule.

12          But I have tremendous respect for my brother

13  Judge Korman.  Spoiler alert.  Whom I've known for 30 years

14  and whom I consider -- I mean, Jack Weinstein is my big, big

15  brother, and Sterling Johnson is my big brother, and Ed Korman

16  is my Dutch uncle, so I'm just saying.

17          Any way, go ahead.

18          MS. SHARKEY:  Your Honor, the other request that I

19  would ask the Court to review is that we have also asked

20  government counsel, in regards to the cooperating witnesses,

21  to provide defense counsel with any investigations concerning

22  those witnesses in the case.

23          Both of those witnesses have come attention,

24  obviously, to the government.  Both of them have been

25  investigated.  We've been provided with very fulsome discovery

PROCEEDINGS                                           16

1    on this particular event, the charged event.

2            We also note, from our review of the 302s, that

3    these witnesses were asked about other individuals under

4    surveillance or under supervision.  If there are any other

5    findings, aside from the 302s that we've received that reflect

6    upon those witnesses' criminal activities, we're certainly

7    allowed to cross-examine about other bad acts, and we would

8    request that the Court direct the government to provide us

9    with any such findings or 302s by other investigatory

10   agencies.

11           THE COURT:  Are you seeking to expand the law of 404

12   admissibility?

13           MS. SHARKEY:  But not for -- I understand the

14   Court's question, but not for cooperating witnesses.

15           THE COURT:  I'm just asking.

16           MS. SHARKEY:  No.  I don't -- I don't seek to expand

17   it, but I do seek to pursue the government in providing

18   defense counsel with all bad acts of their witness that would

19   affect their credibility for the finder of fact in this case.

20           THE COURT:  What is your response to that request

21   for -- somehow I'm having an out-of-body experience here.

22   You're pushing for a 404, but then again, that's one of the

23   joys of this position.

24           What is your response to what Ms. Sharkey has just

25   articulated?

PROCEEDINGS                                    17

1          MR. PRAVDA:  One moment, Your Honor, I found

2    Ms. Sharkey's description confusing, so I just want to consult

3    with my colleague to make sure I understand what it is.

4          THE COURT:  Okay.  Do you want to state it again?

5          MS. SHARKEY:  Let me state it again.

6          It's not a 404 for the witnesses, it's *Giglio* for

7    their witnesses.

8          THE COURT:  Okay, *Giglio*.

9          MS. SHARKEY:  I should have --

10          THE COURT:  No, no --

11          MS. SHARKEY:  -- clarified that.

12          THE COURT:  -- I'm the one that created the muddle,

13    so forgive me.  I do that sometimes.

14          MS. SHARKEY:  Me too.

15          THE COURT:  Not as much as I do, but...

16          MR. PRAVDA:  Your Honor, I believe that we have

17    provided all of that to the defense.

18          THE COURT:  To the extent that you have not provided

19    any of it to the defense, are you prepared to provide it or to

20    advise the Court at our conference on Thursday as to what

21    you're not providing them and why you're not providing it to

22    them?

23          MR. PRAVDA:  I'm certainly prepared to provide any

24    *Giglio* information of the government's cooperating witnesses.

25          I just don't believe that there's anything that is

PROCEEDINGS                                           18

1    out there now that has not already been provided.

2            THE COURT:  I get it.  If you have provided

3    everything that defense counsel is asking for, that's fine.

4            Right, Ms. Sharkey?

5            MS. SHARKEY:  That's correct.

6            THE COURT:  Okay.  So you can't give them what

7    doesn't exist.  So if it doesn't exist, you'll just confirm it

8    doesn't exist at Thursday's conference; and if it does exist,

9    you will either provide it for them or explain why they're not

10   entitled to the *Giglio* material and then I will rule on

11   Thursday at our conference promptly from the bench.

12           MS. SHARKEY:  And, Judge, may I just say that the

13   list is on the August 30th letter on the second page.

14           THE COURT:  Yes, I know, and more importantly my law

15   clerks know.  So we got that.

16           MS. SHARKEY:  Thank you.

17           I'm finished with me portion.

18           THE COURT:  Okay.

19           Miss Macedonio?

20           MS. MACEDONIO:  Your Honor, I'm going to be covering

21   the government's application for expert testimony in the case.

22           THE COURT:  Yes.

23           MS. MACEDONIO:  And I am addressing the expert --

24   not the linguist who they propose to have testify at the

25   trial, but --

PROCEEDINGS                                    19

1          THE COURT:  You are going to talk about the expert

2     who is going to tell everybody about ISIS back in the day?

3          MS. MACEDONIO:  Correct.

4          THE COURT:  To use the generic term.

5          MS. MACEDONIO:  Yes.

6          So it's important for the Court to know that -- or

7     at least with respect to this argument, that Mr. Kasimov is

8     charged with two counts of the superseding indictment.

9          Count One charges him with a conspiracy to provide

10    material support to an FTO, and Count Two charges him with an

11    attempt to do the same.

12         So accordingly, the government must establish that

13    Mr. Kasimov --

14         THE COURT:  I'm going to ask to you slow it down.

15         MS. MACEDONIO:  I'm sorry.

16         THE COURT:  Lord Vader and Woody Allen or Annie Hall

17    or on the side of Chris Rock.  Slower --

18         MS. MACEDONIO:  Okay.

19         THE COURT:  -- please.  Go ahead.

20         MS. MACEDONIO:  The government must establish that

21    Mr. Kasimov knowingly conspired and attempted to provide

22    material support or resources to an FTO.

23         My first application, Your Honor, is that the expert

24    should not be permitted in any case to testify prior to the

25    government's calling of the two cooperating witnesses in this

PROCEEDINGS                                    20

1    case.

2            Those witnesses, it would seem, would have more

3    knowledge -- the expert would have no knowledge of

4    Mr. Kasimov's knowing what was going on in his mind or his

5    intent.  So for that, the expert has no relevant testimony

6    whatsoever.

7            THE COURT:  Isn't the expert being called to be the

8    table setter to set the context for what the cooperating

9    witnesses will testify with respect to what might or might not

10   have been going on with respect to this alleged conspiracy?

11           MS. MACEDONIO:  But what's at the issue, the crux of

12   what is at issue in this case, is Mr. Kasimov's intent and his

13   knowledge.

14           THE COURT:  No question about that.

15           But having said that, and I accept that, all right,

16   the question I'm asking you is:  The purpose, as I understand

17   it from the government's papers, of the expert is to say this

18   is what had the world of ISIS was up to back at the period of

19   the alleged conspiracy, this is the lay of the land.  ISIS may

20   or may not have moved on.

21           But in terms of what you're going to hear testimony

22   about, let us take you back to those halcyon days of 2013,

23   '14, '15.  That is what I understand the expert testimony --

24   is that what you folks want to use the expert for?

25           MR. HAGGANS:  That's a yes, Your Honor.

PROCEEDINGS                    21

1        THE COURT:  So that's what they said in the papers.

2   Now you're saying, no, they can't have the expert before they

3   have the cooperating witnesses.

4        Where is that written in the law that they can't set

5   the table, in terms of the historic, if you will, background

6   before calling the cooperators?

7        MS. MACEDONIO:  It's nowhere written in the law.

8        THE COURT:  Okay.

9        MS. MACEDONIO:  But if we are -- if we're trying to

10  sort of forecast what would be relevant at this -- during the

11  course of this trial, what would be admissible during the

12  course of this trial, and what goes to the heart of

13  Mr. Kasimov's guilt or innocence, and whether the expert's

14  testimony is at all permissible.  It seems to me that the

15  expert's testimony should come in after the cooperators.

16       THE COURT:  But I'm asking you where under 702 or

17  other decisional law or rules of evidence or statutes there's

18  a requirement?

19       MS. MACEDONIO:  There is -- I'm sorry.

20       THE COURT:  So there is none?

21       MS. MACEDONIO:  There is no requirement.

22       THE COURT:  Okay.  So you're saying it's up to my

23  discretion whether I allow the table setter to set the table

24  before going there.

25       Okay, I just wanted to be clear on that.  Go ahead.

PROCEEDINGS                                    22

1              MS. MACEDONIO:  So the government in its August 9th

2      letter sets out for the Court what it intends to have the

3      expert testify about.

4              And the first bullet is entitled "The Process of

5      Radicalization."

6              If I'm correct, I understand that the government is

7      no longer seeking to have the expert testify with regard to

8      that.

9              THE COURT:  Let's stop right there.  Address it to

10     the Court, and then I'll ask him.

11             Is that true?

12             MR. HAGGANS:  I think that topic may come up, Your

13     Honor.  We did file a supplemental disclosure on Saturday, the

14     7th.  Unless they refer to it, we do not expect it will be a

15     meaningful or substantial portion of the testimony.

16             THE COURT:  Meaningful, substantial, these are words

17     that make me uneasy as an old definitional Wall Street sort of

18     guy.

19             So either you're going to do it or you want to

20     reserve the right to do it.  I mean, we're a week from trial.

21     If we were five months from trial, I might let you get away

22     with reasonably anticipating, but we're closer than that.

23             Are you going to go down that road or not go down

24     that road or you want the right to go down that road, which is

25     it?

PROCEEDINGS                          23

1          MR. HAGGANS:  I do not -- we do not intend to go

2    that road in our direct.  I can't exclude the possibility that

3    it might come up as a result of --

4          THE COURT:  All right, well let's just limit the

5    discussion for the moment at least to the direct.

6          So sounds to me like they're not going to do it on

7    direct, and I'm perfectly prepared to entertain an order that

8    says they're not allowed to do it on the direct.

9          Obviously, in terms of doors that are inadvertently

10   or advertently opened by the defense one way or another, they

11   may be allowed do it later, but I think that's where I'm going

12   to come out on that.

13         Go ahead.

14         MS. MACEDONIO:  Thank you, Your Honor.

15         The second bullet in the August 9th, 2019 letter

16   indicates that the government intends to elicit testimony from

17   the expert regarding the manner and means by which ISIS and

18   its apparent recruited followers and foreign fighters to ISIS

19   including within the United States.

20         There is no allegation in this case that Mr. Kasimov

21   had been recruited.  There is no allegation in this case that

22   he intended to travel to join ISIS.

23         The fact pattern, as I understand the government

24   will be alleging, is that at the 11th hour Mr. Kasimov shows

25   up at John F. Kennedy International Airport and hands money

PROCEEDINGS                    24

1   over to another individual.

2            I don't see how this evidence is relevant to his

3   guilt or innocence given that fact patter.

4            THE COURT:  Okay.  Let me hear the response from the

5   government.

6            MR. HAGGANS:  Your Honor, this is also a topic that

7   we address in our September 7th supplemental filing.  It is --

8   it will be important for the jury to understand the call that

9   ISIS was making to the world as of the time of the events that

10  are alleged in the indictment that the government has to

11  prove.

12           Specifically that ISIS was attempting to recruit

13  individuals from all over the world, including from within the

14  United States, to travel to caliphate in order to join ISIS

15  and to further its objectives.

16           The fact that the defendant may not have been

17  individually communicated with via a known or identified ISIS

18  adherent or a person actually in the caliphate is not a sine

19  qua non of the government's proof in this case.

20           THE COURT:  Well, this goes to the whole question of

21  people going on websites and that sort of thing?

22           MR. HAGGANS:  More that part of ISIS' publicly

23  stated objectives, as of the time the events in the

24  indictment, were to bring Muslims from all over the world to

25  the caliphate in order to join up.

PROCEEDINGS 25

1        THE COURT:  So it's part of their modus operandi, if

2  you will.

3        MR. HAGGANS:  That's correct.

4        THE COURT:  What's the problem with that?

5        MS. MACEDONIO:  Your Honor, when I began my argument

6  with respect to this, I talked about the cooperating witnesses

7  and that they would have the most direct evidence or the only

8  direct evidence with regard to what Mr. Kasimov --

9        THE COURT:  I understand the direct evidence with

10 respect to Kasimov, but they're making a different point that

11 this is the nature of the universe in which ISIS was operating

12 in in 2015, and they want the jury to understand that that's

13 the background.

14        Now in terms of what an individual was doing or not

15 doing, obviously the government has the burden of proof beyond

16 a reasonable doubt to show what he was or was not up to.

17        But in terms of what the world looked like, I don't

18 understand why they should be precluded from having an expert,

19 who you can certainly cross-examine and put on your

20 countervailing expert, if I wish to do so, with respect to

21 that point.  So I don't know why they would be precluded from

22 going forward and presenting that world view through an expert

23 to the jury.

24        MS. MACEDONIO:  Well --

25        THE COURT:  They are not talking about, again, your

PROCEEDINGS                           26

1   client's individual state of mind.  They don't -- that's not

2   what this is for.

3              MS. MACEDONIO:  Understood, Your Honor.

4              But the argument is that it is irrelevant to

5   Mr. Kasimov's particular state of mind.  The cooperators will

6   testify as to precisely what happened in this case and to what

7   Mr. Kasimov was told.  And that this -- the means of which

8   they understood people would be traveling, the cooperators

9   will testify to that.  And that this particular witness'

10  testimony really adds nothing other than to bootstrap and --

11  what's the word?

12             THE COURT:  Enhance.

13             MS. MACEDONIO:  Enhance the cooperators' testimony.

14             THE COURT:  I have your argument.

15             MS. MACEDONIO:  Thank you.

16             THE COURT:  Okay.

17             MS. MACEDONIO:  Should I move on to the next one?

18             THE COURT:  Please.

19             MS. MACEDONIO:  The government also asserts in its

20  August 9th, 2019 letter that the expert, or the proposed

21  expert, would testify with regard to the methods by which

22  those followers traveled to ISIS controlled territory,

23  including but not limited to Turkey.

24             The allegation in this case is that the traveler,

25  who is believed to be Saidakhmetov who was arrested at the

1   airport, was getting on a flight to Istanbul, Turkey.

2           I believe the government's factual allegation is

3   going to be that thereafter it was Saidakhmetov's intent to

4   travel from Turkey to Syria.  It doesn't really add much for

5   the expert to get on the stand and testify that Syria is next

6   to Turkey.  We would certainly stipulate to that.  And I

7   believe, again, the cooperators are going to testify about

8   what the plan was.

9           One of the cooperators, whose name I will leave off

10  the record, indeed purchased a ticket for Mr. Saidakhmetov,

11  and so there should be ample evidence, absent the expert, to

12  explain what the plan was.

13          THE COURT:  I have your argument.

14          MS. MACEDONIO:  Thank you, Your Honor.

15          The role the government also advances in its

16  August 9th, 2019 letter, the role that they want to establish

17  through the expert, the role of foreign fighters, including

18  those recruited from the United States with ISIS overall

19  agenda, including but not limited to, its media and public

20  relations strategies.

21          I don't know how this has any part of this trial,

22  quite frankly, I think it's wholly irrelevant.  It's not an

23  issue at all and just should not and used at the trial.

24          THE INTERPRETER:  I have your argument.

25          MS. MACEDONIO:  Finally, and the most alarming

PROCEEDINGS                                    28

1   aspect of the expert's testimony is that they intend to put

2   the expert on the stand to discuss specific acts of terrorism

3   perpetrate by or claimed by ISIS.

4            And then in the government's motion for a partially

5   sequestered and anonymous jury, they outline exactly what it

6   is they intend to elicit through this expert.

7            There is absolutely no need for this, Your Honor.

8   There are articles with respect to ISIS every single day in

9   the newspaper.  This is not something that a juror needs an

10  expert to testify about and there is no reason to admit this,

11  other than to inflame this jury.

12           THE COURT:  I think inflamed or an absence of

13  influence of this choice of phrase, because of some of the

14  activities that ISIS allegedly engaged in at the time, but I

15  have your argument, the 403 argument, essentially.

16           MS. MACEDONIO:  Yes.  To the extent I have -- yes,

17  it is -- anything out that I drafted in my papers, I

18  incorporate that part of my argument.

19           THE COURT:  Of course.  Of course.  Thank you.

20           MS. MACEDONIO:  Thank you.

21           THE COURT:  Other points?

22           MR. RUBERT-SCHEWEL:  Yes, Your Honor.  I'm going to

23  start by addressing our response to the government's motion to

24  include proffer statements, if we trigger those.

25           I would start by saying that *United States v Rosemon*

1    is the seminal case on this issue, and it clearly addresses,

2    as I'm sure Your Honor is familiar with, what the defense can

3    do and what the defense cannot do.

4            The two areas that I would like to highlight are

5    that, one, *Rosemon* clearly states that the defense may argue,

6    specifically in applying to opening or closing, that the

7    government has failed to prove particular elements of the

8    crime, such as intent or knowledge.

9            Now, in discussing that, in the body of the opinion,

10   *Rosemon* also says that specifically, if the government does

11   put facts into the case, the defense can then respond, for

12   example, in summation by saying those facts do not improve --

13   do not prove intent or knowledge.

14           So as long as we do not put those facts in, it is

15   our position that we are not opening the door.

16           THE COURT:  Let me stop you right there.

17           What's your response to that observation?  Do you

18   agree, disagree?

19           MR. PRAVDA:  ███████████████████████████

20   ████████████████████████████████████████████

21   ██████████████████████████████████████████████

22   ██████████████████████████████████████████████

23   ███████████████████████████████████████████

24   ████

25           THE COURT:  And why can they not argue that?

PROCEEDINGS                                    30

1          MR. PRAVDA:  Because that would implicate the waiver

2    of the proffer of protected statements.

3          MS. MACEDONIO:  Your Honor --

4          THE COURT:  Hang on.  Hang on.  That's why.

5          Okay, what's your response to that?

6          MS. MACEDONIO:  Much to the -- in much the same way

7    that Mr. Pravda argued that there are individuals in the room

8    that should not be able to disclose the cooperator's name, I

9    would ask that the Court issue the same order with regard to

10   what we are discussing now as to --

11         THE COURT:  So ordered.

12         MS. MACEDONIO:  -- Mr. Kasimov.

13         THE COURT:  So ordered.

14         MR. PRAVDA:  No objection.

15         THE COURT:  Okay.  Continue.

16         MR. RUBERT-SCHEWEL:  My specific response to that

17   would be that if the government, or one of the government's

18   witnesses introduces a fact, and the government intends to use

19   that fact to prove intent or knowledge, then in summation, we

20   are permitted to say that that fact does not prove intent or

21   knowledge.  And I believe that that's clear in *Rosemon*.

22         THE COURT:  What is your response to that argument?

23         MR. PRAVDA:  That's correct, Your Honor.

24         THE COURT:  You're killing it.

25         MR. RUBERT-SCHEWEL:  Well, it's early.

1              THE COURT:  I know.

2              MR. RUBERT-SCHEWEL:  My second point, Your Honor,

3     would just go to cross-examination.

4              So in that same tone or tenor, if a government

5     witness states a fact on cross-examination, we are allowed to

6     cross-examine based on those facts, even if those facts go to

7     intent or knowledge, as long as we do not elicit any new facts

8     that go to intent or knowledge.

9              THE COURT:  That's a little, I think the technical

10    legal term is zaftig.

11             What exactly are you getting at?

12             MR. RUBERT-SCHEWEL:  So I have the opinion, and I

13    can point you exactly to it.

14             THE COURT:  But I mean what is your concern?

15             Give me a --

16             MR. RUBERT-SCHEWEL:  Okay.

17             THE COURT:  -- a hypothetical that might or might

18    not emerge in this case, which we're trying a week from today.

19             MR. RUBERT-SCHEWEL:  A hypothetical could be if we

20    have evidence in a 302 or 3500 material that we believe goes

21    to show that Mr. Kasimov did not have knowledge of what he was

22    doing.

23             THE COURT:  Right.

24             MR. RUBERT-SCHEWEL:  If the government previously

25    had elicited that on direct examination, we are allowed to go

1    into it on cross.  We are not allowed to go into it on cross

2    if the government does not elicit.

3            THE COURT:  What is your response to that?

4            MR. PRAVDA:  I don't think that's accurate, Your

5    Honor.

6            So if I can put this in more concrete terms.

7            THE COURT:  Please.

8            MR. PRAVDA:  With a hypothetical.

9            THE COURT:  With a hypothetical.

10           MR. PRAVDA:  If, for example, we know from Kasimov's

11   own proffer of protected statements that Kasimov stated that

12   cooperating witness one told him that Saidakhmetov was going

13   to Syria to join ISIS, they cannot -- the defense cannot then

14   be permitted to cross-examine the cooperating witness in a way

15   that suggests that he is making that up, or that he is lying

16   with regard to a statement that the cooperating witness might

17   make with respect to that point.

18           THE COURT:  Are you saying they can't say to the

19   cooperator you said X, but you're a liar?  They can't -- is

20   that what you're saying, they can't call the cooperator a

21   liar?

22           MR. PRAVDA:  I think they can, Your Honor, but if

23   they do that, that opens the door to allowing the government

24   then to put in evidence of what Kasimov said to the government

25   with respect to what cooperating witness one said to Kasimov.

PROCEEDINGS                                33

1        THE COURT:  What's your response to that?

2        MR. RUBERT-SCHEWEL:  I think that -- I think that

3   may be correct.  I think that what we are permitted to do and,

4   again, I'll point you to page 14 of *United States v Rosemon*,

5   which specifically goes into scope the defense counsel's

6   cross-examination, and in it it says that -- it's talking

7   about cross-examination, it says the questions --

8        THE COURT:  Vader not Woody Allen.

9        MR. RUBERT-SCHEWEL:  Sorry, Your Honor.

10       It states that the questions at issue attack the

11  government's proof without asserting any new facts.

12       So as long as the questions do merely that without

13  saying something like this never happened, or this never

14  existed, I think that we are in safe territory.

15       THE COURT:  Well, I tell you what I'm going to do,

16  because now we're having lots of very interesting hypothetical

17  questions and answers.

18       I think we're going to try this case a week from

19  today, and questions will be asked and objections will be

20  made, and rulings will be made.

21       You can be sure that you've informed me and my

22  stellar law clerks as to the law in this area, and we will be

23  completely up the curve, and if there are any mistakes of law

24  made by my rulings, they will be my mistakes not those of my

25  brilliant law clerks or of distinguished counsel on both

PROCEEDINGS                34

1    sides.

2          You'll ask questions.  There will be objections.

3    I'll make rulings.  We will have a few sidebars.  The record

4    will be very clear.

5          Okay, I think we all know what the governing law is,

6    and it's just a question of where the tripwire lines get

7    called, and that's why they pay me the big bucks.

8          But that's why my big, big brother, and my big

9    brother, and my Dutch uncle trained me well in the 20 years

10   before I was appointed to this position as to what the rulings

11   ought to be.

12         So I hear you.  I have your argument on that point.

13         MR. RUBERT-SCHEWEL:  I will now move on to the

14   government's motion and our response for an anonymous and

15   sequestered jury.

16         THE COURT:  I'll save you the time.  There is going

17   to be an anonymous and partially sequestered jury in this

18   case.  I read your papers.  I understand the argument.  You

19   going to have it.

20         I don't want there to be any conclusion or delays

21   about that.  We're going to have an anonymous and a partially

22   sequestered jury in this case.

23         One of the things I routinely do in my jury

24   selections -- some of you may know this from having tried

25   criminal cases before me, I do it in civil cases as well -- my

PROCEEDINGS                                    35

1   view is that jurors in all cases are the giving up enormous

2   amounts of time, economic disadvantage, privacy by serving on

3   juries.

4             And in the modern world where people can friend

5   people out of the blue and there's all sorts of possibilities,

6   even in the most plain vanilla contract disputes, I do not let

7   the lawyers drill down on what people's favorite colors are,

8   or whether they prefer Fox News to Rachel Maddow.

9             I try to have, in every jury trial, as close to an

10  anonymous jury as I can get once the jurors have been selected

11  from the jury panel to come here.

12            I do believe it's a serious problem and I don't want

13  anyone to be unduly burdened.  I think the record is very

14  clear here, given the nature of the case.  But, candidly, if I

15  can do this in virtually every case involving a slip-and-fall

16  I would do it.

17            So you've made your record.  I will give a full

18  ruling on the record.  Your objections to my ruling are

19  certainly preserved.  It will be part of my written order,

20  which you will have on or before Thursday.

21            But I just want to you understand we're going to

22  proceed in that fashion.  I think it can be done in a way, and

23  I will do it in a way that is completely nonprejudicial to

24  either side.

25            As I said, I do it as much as I can in a simple

PROCEEDINGS                                    36

1   slip-and-fall case.  I just believe it's important in the

2   modern area to protect the integrity of the jury system and

3   not to have people concerned about things, whether it's cell

4   phones in the hands of members of the public.  They are not

5   going to have that issue in some cases.  It's just terribly

6   important, and I think it goes to the integrity of the jury

7   system.

8           So feel free to preserve your objection.  I read

9   your papers.  I understand it.  I would do it in all cases, if

10  I could do it, just because I don't think it's something that

11  enhances the jury system to have jurors subject to

12  meddlesomeness from lawyers and from the public, directly or

13  indirectly.  It's just not needed.

14          So objection noted, objection preserved.

15          MS. MACEDONIO:  Your Honor, just following up on

16  that.  The parties have been working on a joint questionnaire.

17  I know I had previously sent one to the Court.

18          THE COURT:  Yes.

19          MS. MACEDONIO:  We have since revised that, given

20  some discussions we've had amongst the parties.  I sent

21  another version of it to the government this morning.  I know

22  they haven't had the opportunity yet to review it.  We just

23  like the opportunity to continue to confer with one another --

24          THE COURT:  Yes, please do.

25          MS. MACEDONIO:  -- and give the Court the final

PROCEEDINGS                              37

1    version.

2           THE COURT:  I much prefer to have a joint

3    submission.  It not only helps my friends on 17th floor, but I

4    just want to emphasize, that I know counsel on both sides are

5    particularly sensitive to the protections of the jury because,

6    as we've seen, it's not simply an issue of defendants or the

7    government being inappropriate in terms of anonymity with

8    juries.  There have been historically, I don't mean in this

9    district but elsewhere, real problems with that on both sides.

10          So please continue to work on that and hopefully we

11   can come up with the *voir dire* that is acceptable to all.

12          But I will do it, and I will do it in a way that

13   makes it clear that this is about protecting jurors' sense of

14   privacy in the internet age, and in the age of the lack of

15   privacy on so many regards.

16          It's not about criminal cases.  It's not about

17   alleged terrorist cases.  It's about the modern era and our

18   lack of privacy as citizens.  And I think it's a much deeper

19   and broader problem, not that these are not important issues

20   for our case, but these are important issues with the entire

21   process.

22          And I've thought a lot about this, and I come at

23   this from a very, very much more global, not to denigrate the

24   criminal world, but a much more global concern about privacy

25   of jurors because I've had it in issues in civil cases going

PROCEEDINGS                              38

1  back to the 1970s, before any of you folks were born so, okay.

2          Other issues?

3          MR. HAGGANS:  No, Your Honor.  I would just state

4  for our FISA motion that we would just rest on our motion.  We

5  have no oral argument on that.

6          THE COURT:  Okay, thank you.

7          Anything else from the defense side?

8          MS. MACEDONIO:  Your Honor, I have a request from

9  Mr. Kasimov to adjourn the start of the trial date, given it's

10  proximity to September 11th.

11          THE COURT:  Interesting request.

12          I'm not going to make reference to any other

13  adjourned proceedings that were supposed to happen in

14  Camp David this week, but go ahead.

15          MS. MACEDONIO:  I would like the opportunity to just

16  briefly address this in writing.  I'll get it in as quickly as

17  I can.

18          THE COURT:  Well, let me ask the government what

19  their response is to this concept?

20          MR. PRAVDA:  Your Honor, we object.

21          And we particularly object because defense counsel

22  has known for quite sometime what date this trial is scheduled

23  to begin.  We have now turned over all of our 3500 material,

24  which I know -- I note for the Court that they requested we

25  turn over far in advance, and in some cases we accommodated

PROCEEDINGS                                    39

1    them for that, and this smells a lot like --

2                THE COURT:  Now, now.  Now, now.  I'm just

3    suggesting before you go on, think about -- think about what

4    you're going to say.

5                MR. PRAVDA:  Eighteen years we moved from

6    September 11th.  ISIS is not responsible for the World Trade

7    Center attack.  There's no connection between what the charges

8    are in this case, what the defendant is alleged to have done

9    in this case and what happened on September 11th, other than

10   the mere fact that the subject matter is a terrorism trial.

11               But that alone is not enough to warrant moving the

12   trial date, particularly where the government has already been

13   moving towards getting everything ready for that date.

14   Witnesses have made travel plans.  There are hotel

15   reservations booked.  People are coming in from other parts of

16   the United States to testify in this case, and this is a

17   belated request that the Court should reject, in our opinion.

18               THE COURT:  What is your response?

19               MS. MACEDONIO:  Your Honor, we indeed did know when

20   the trial was going to be.  My client has asked me to make the

21   application, I am complying with his request.

22               And if the Court wants to entertain anything in

23   writing, I'd be happy to do so.

24               THE COURT:  I'm happy to entertain anything in

25   writing, and I will certainly make a ruling on or before

PROCEEDINGS                          40

1    conference.

2              What time are we meeting on Thursday?

3              MS. MACEDONIO:  2p.m.

4              THE COURT:  2 p.m.?  Is that the time?

5              MS. MACEDONIO:  I'm sorry, Your Honor.

6              THE COURT:  10 a.m.  On Thursday?

7              MS. MACEDONIO:  Thank you.

8              THE COURT:  Okay.

9              But you should anticipate that the motion will be

10   denied and that we will go to trial next week as scheduled for

11   planning purposes on your end.

12             I don't want you to say, gee, Judge, you waited

13   until Thursday, and now we have a problem.  So assume that

14   we're going forward, unless I tell you that we're not, and I

15   will tell you on or before Thursday at 10 a.m., when we are

16   together again.

17             MS. MACEDONIO:  Understood, Your Honor.

18             THE COURT:  Okay.

19             MS. MACEDONIO:  When the Court came out, you listed

20   a series of motions that had been submitted.  I'm not sure if

21   the codefendant's motion is in play, the motion to dismiss

22   Counts One and Two.

23             That may have been dismissed by the Court as moot.

24   To the extent that it has not been, we would just rely on the

25   papers submitted by the codefendant.

PROCEEDINGS                                    41

1          THE COURT:  Yes, I understand that.

2          MS. MACEDONIO:  The Court also referenced the

3    government's motion to preclude the entrapment defense.  That

4    will not be a defense that Mr. Kasimov will pursue.

5          THE COURT:  Including a derivative entrapment?

6          MS. MACEDONIO:  That's correct, Your Honor.

7          THE COURT:  Okay.

8          MS. MACEDONIO:  I don't think we have anything else.

9          THE COURT:  Okay.

10         Anything else from the government?

11         MR. PRAVDA:  Your Honor, if the Court wishes to

12   entertain argument with respect to the motion to dismiss Count

13   One and Two, I'm happy to provide the Court with that.  We did

14   not treat it as moot, even though it has been filed by

15   Mr. Stern.

16         THE COURT:  I'm denying the motion.

17         MR. PRAVDA:  Okay.  Thank you.

18         And I think that that covers all of the motions that

19   the Court listed.

20         THE COURT:  All right.

21         Is there anything else from the defense today?

22         MS. MACEDONIO:  No, Your Honor.  As soon as the

23   parties have had the opportunity to fully vet the

24   questionnaire, we'll get it to the Court.

25         THE COURT:  Thank you.

PROCEEDINGS                                    42

1            Anything else from the government?

2            MR. PRAVDA:  No, Your Honor.

3            THE COURT:  Thank you.

4            And I understand, Mr. Stern -- you're looking

5    particularly fetching -- you have an application to make, sir?

6            MR. STERN:  Yes.  There's apparently an order that

7    was issued under seal regarding Docket Number 370, and my

8    application is that that order be mailed to me.

9            THE COURT:  That order will be emailed to you

10   pursuant to your request.  Happy to do so.  So order.

11           MR. STERN:  Thank you.

12           THE COURT:  Anything else?

13           MS. MACEDONIO:  I'm sorry, Your Honor, I forgot to

14   include that I sent an order over, a proposed order over to

15   the Court regarding the defendant's ability to submit clothing

16   to the MDC so that --

17           THE COURT:  I thought I had signed that order.  No,

18   no, I believe I have.  Didn't I sign that order?  Yes?

19           THE LAW CLERK:  No.

20           THE COURT:  No?

21           Why don't you submit another copy of it --

22   Mr. Jackson was out the last several weeks.

23           Do we have it?  What's the number?

24           THE COURTROOM DEPUTY:  Oh, Judge, she handed it up

25   before the start of the conference.

PROCEEDINGS                                    43

1          THE COURT:  Just now?

2          THE COURTROOM DEPUTY:  Yes.

3          THE COURT:  Why don't you hand it to me and I will

4    sign it.

5          THE COURTROOM DEPUTY:  I'm sorry.

6          THE COURT:  That's okay.  You're obviously just back

7    from holiday, Mr. Jackson, and I get it.

8          I take it -- let me just -- have you shown a copy of

9    the proposed order to your adversary?  I have two copies.

10          MS. MACEDONIO:  I haven't.

11          THE COURT:  Why don't you show it to the government

12   see if they have any objections to the proposed order.

13          (Proffering.)

14          (Pause.)

15          MR. PRAVDA:  Your Honor, the government has reviewed

16   the order and has no objection.

17          THE COURT:  The Court is signing the order, and

18   shall we mark this Court 1 to this proceeding, or just go with

19   the ECF number?  What do you suggest?

20          THE COURTROOM DEPUTY:  It can be Court 1, Judge.  I

21   can mark it right now.

22          THE COURT:  Why don't you do that, Court 1.

23          (Court Exhibit 1, was received in evidence.)

24          THE COURT:  Thank you.

25          May I have a motion from the government to have

PROCEEDINGS                              44

1   Court 1 admitted into evidence, please?

2            MR. PRAVDA:  So moved, Your Honor.

3            THE COURT:  Any objection?

4            MS. MACEDONIO:  No.

5            THE COURT:  It's admitted.  The Court notes that it

6   does allow the defendant to have the tie, so there you go.

7            MS. MACEDONIO:  Thank you.

8            THE COURT:  Okay.  You're welcome.

9            Anything else?

10           MS. MACEDONIO:  One final issue, Your Honor.

11           We provided the government with a hard drive that

12  they can send directly to the MDC with Mr. Kasimov's phone

13  dump and the reports that were generated from that.  We would

14  just ask that you do that as quickly as possible, given the

15  upcoming trial date.

16           THE COURT:  I take it there are no security, FISA,

17  SCIF-type issues with respect to the phone; is that right?

18           MR. PRAVDA:  Not with respect to Mr. Kasimov's

19  phone, Your Honor.

20           MS. MACEDONIO:  That's it.  Thank you, Your Honor.

21           THE COURT:  You're very welcome.

22           We'll see you folks Thursday at 10 a.m.

23           MR. PRAVDA:  And then the last thing from the

24  government, Your Honor, is just to make a record that we

25  turned over the 3500 material at the beginning of this

PROCEEDINGS                      45

1    appearance to defense counsel for the remaining witnesses.

2             We had previously turned over 3500 material for the

3    cooperating witnesses, and we will be filing a short letter on

4    ECF later today to reflect that.

5             THE COURT:  So noted.

6             MS. MACEDONIO:  The Court should also know that the

7    parties have been entertaining various stipulations to try and

8    move the trial along in an expeditious manner.  We'll continue

9    to discuss those stipulations with the attorneys for the

10   government to make sure that we can further that process.

11            THE COURT:  I appreciate that, Ms. Macedonio, and,

12   Ms. Sharkey, and file it on ECF.  Thank you very much.

13            MS. SHARKEY:  Thank you.

14            THE COURT:  I believe we're adjourned.

15            I think it would be a good idea to maybe take a

16   moment to make it clear to the court reporter what portions

17   are and are not under seal, which I think the court reporter

18   was asking me desperately to make sure we do before you folks

19   depart.

20            Is that something we can do?

21            MS. MACEDONIO:  Absolutely, Your Honor.

22            THE COURT:  How do you want to do that mechanically,

23   do you want to have time to do that?

24            MR. KESSLER:  So, Your Honor, we can just go over to

25   the court reporter and talk to her at the close of the

PROCEEDINGS                                    46

1   session, because I think the record already reflects the

2   Court's direction about what part can be sealed, so we can

3   just clarify that.

4            THE COURT:  Right.  And as long as you're in

5   agreement, that's fine.  In the unlikely event that there is

6   disagreement, you will let me know what the area of

7   disagreement is and we'll harsh that out on Thursday.  But I

8   know the court reporter has realtime up and running, so

9   hopefully there shouldn't be any issues with respect to that.

10           Okay?  Anything else?

11           MS. SHARKEY:  No.

12           MR. PRAVDA:  No.

13           THE COURT:  Thank you.

14           I appreciate a very well argued set of motions.

15           Thank you.  We're adjourned.

16           MS. MACEDONIO:  Thank you.

17

18           (Whereupon, the matter was concluded.)

19

20                  *    *    *    *    *

21

22   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
23

24       s/ Linda D. Danelczyk            September 13, 2019

25          LINDA D. DANELCZYK                    DATE

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*