1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ------------------------------x
                                        15-CR-95(WFK)
3    UNITED STATES OF AMERICA,
                                        United States Courthouse
4            Plaintiff,                 Brooklyn, New York

5            -against-                  September 12, 2019
                                        10:00 a.m.
6    DILKHAYOT KASIMOV,

7            Defendant.

8    ------------------------------x

9        TRANSCRIPT OF CRIMINAL CAUSE FOR PRETRIAL CONFERENCE
              BEFORE THE HONORABLE WILLIAM F. KUNTZ, II
10                  UNITED STATES DISTRICT JUDGE

11   APPEARANCES

12   For the Government:       UNITED STATES ATTORNEY'S OFFICE
                               Eastern District of New York
13                             271 Cadman Plaza East
                               Brooklyn, New York 11201
14                             BY:  DOUGLAS M. PRAVDA
                                    DAVID K. KESSLER
15                                  MATTHEW HAGGANS
                               Assistant United States Attorneys
16
     For the Defendant:        ELIZABETH E. MACEDONIO, P.C.
17                             40 Fulton Street - 23rd Floor
                               New York, New York 10038
18                             BY:  ELIZABETH E. MACEDONIO, ESQ.

19                             KELLEY J. SHARKEY
                               26 Court Street - Suite 2805
20                             Brooklyn, New York 11242
                               BY:  KELLEY J. SHARKEY, ESQ.

21

22

23

24

25

PROCEEDINGS                                      2

1                              LORD & SCHEWEL
                               233 Broadway - Suite 2220
2                              New York, New York 10279
                               BY:  ABRAHAM RUBERT-SCHEWEL, ESQ.
3


4
Also Present:                  SANJAR BADADJANOV, INTERPRETER
5
Court Reporter:                LINDA D. DANELCZYK, RPR, CSR, CCR
6                              Phone:  718-613-2330
                               Email:  LindaDan226@gmail.com
7

8    Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
9

10                        *     *     *     *     *

11

12

13                (In open court.)

14                THE COURTROOM DEPUTY:  All rise.

15                The Honorable William F. Kuntz, II is now presiding.

16                Criminal cause for pretrial conference, Docket

17   Number 15-CR-95, U.S.A. versus Kasimov.

18                Counsel, please state your appearances for the

19   record; spell your first and your last names for the court

20   reporter, including the Uzbek previously-sworn interpreter.

21                MR. PRAVDA:  Good afternoon, Your Honor.  Doug

22   Pravda, David Kessler and Matthew Haggans.  That D-O-U-G

23   P-R-A-V-D-A; David Kessler, D-A-V-I-D, K-E-S-S-L-E-R; and

24   Matthew Haggans, M-A-T-T-H-E-W, H-A-G-G-A-N-S.

25                (Defendant enters the courtroom.)

PROCEEDINGS                          3

1              THE COURT:  Good afternoon.  Please be seated,

2     gentlemen.

3              Ladies and gentlemen of the public, please be seated

4     as well.

5              MS. MACEDONIO:  Good afternoon, Your Honor.

6     Elizabeth Macedonio for Mr. Kasimov; E-L-I-Z-A-B-E-T-H,

7     M-A-C-E-D-O-N-I-O.

8              Mr. Kasimov is present at the table.

9              Ms. Sharkey just stepped out, she'll be right back.

10    And we also have.

11             MR. RUBERT-SCHEWEL:  Good afternoon, Your Honor.

12    Abraham Rubert-Schewel; A-B-R-A-H-A-M, R-U-B-E-R-T, hyphen,

13    S-C-H-E-W-E-L.

14             THE COURT:  Good afternoon.  Please be seated.

15    Thank you.

16             And the interpreter's present again.

17             Would you state your name, sir, and spell it for the

18    court reporter.  State your name and spell it.

19             THE INTERPRETER:  Sanjar Badadjanov.  S-A-N-J-A-R

20    B-A-D-A-D-J-A-N-O-V.

21             THE COURT:  Thank you.

22             The delay today was occasioned, in part, by the fact

23    that the Court has been working with my law clerks on a

24    decision and order.

25             I'm going to read the decision and order, item 401,

PROCEEDINGS                                    4

1   and you'll be provided with copies of it by my courtroom

2   deputy after I read it.

3           Quote, after due consideration of all relevant

4   submissions in evidence, the Court hereby denies in its

5   entirety defendant's motion to disclose and to suppress

6   evidence obtained pursuant to the Foreign Intelligence

7   Surveillance Act, paren, ECF number 336, close paren.  A

8   memorandum of decision explaining the Court's reasoning will

9   follow as soon as is practicable.  So ordered.  Signed by me

10  today.

11          Mr. Jackson will give you copies of this decision

12  and order 401 now.  Please hand it to counsel, and we hope to

13  have that decision filed for you on ECF certainly within the

14  next 24 hours, but I wanted you to know where we had come out

15  on that.

16          All right, second point is, I spoke with the

17  marshals after yesterday's conference, and they have asked me

18  to direct, and I agreed to do it, that the review of whatever

19  *Giglio* 3500 materials or *Brady* materials you're going to see

20  now to review them down in the holding cell area with counsel

21  where you have desks and you will certainly have accessibility

22  to your client.

23          As you may recall yesterday, I said it was up to

24  defense counsel, prosecution, the marshals, and the Court with

25  respect to whether you would be reviewing the materials here

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    5

1    in this courtroom or in the secured facility.

2           After speaking with Mr. Juan Tavares, who came to my

3    chambers the other day, he said that from a security point of

4    view, it made a material difference to the marshal service to

5    have the review conducted with counsel present obviously

6    downstairs, and so that's where you will be conducting the

7    review of the documents.  So I just wanted to make those two

8    points.

9           Now other items -- yes.

10           MS. SHARKEY:  Judge, I just wanted to let you know I

11   was downstairs with Marshal Tavares, and it's terrific.  It's

12   all set up.  It's good to go.

13           THE COURT:  He's a very good man.  He came to see me

14   yesterday, and he assured me there would be no adverse impact

15   on the review process, and I assured him that if there was I

16   would be hearing from Mss. Macedonio and Sharkey.  So I'm glad

17   to hear that he was a man of his word because I know if

18   there's a problem, you'll let me know.

19           MS. SHARKEY:  Judge, Mr. Kasimov would like to waive

20   his appearance for the rest of this appearance so he can go

21   and begin that.

22           Our paralegal, who you authorized yesterday, is down

23   there wired up.  It's on the screen.

24           THE COURT:  Well, I don't know how much more we have

25   to do today.

PROCEEDINGS                                    6

1          MS. SHARKEY:  Okay.

2          THE COURT:  So it may be that we won't be in this

3    space, any of us, much longer today --

4          MS. SHARKEY:  Okay.

5          THE COURT:  -- unless there's more to discuss.

6          So let me turn it over to the government now.  What

7    are your open issues, counsel, that we need to address today?

8          MR. PRAVDA:  Your Honor, I think that one -- we have

9    a few issues.  I don't think it will take us long.

10          One is with respect to the jury selection.

11          THE COURT:  Yes.

12          MR. PRAVDA:  The Court had inquired our views

13    regarding certain emails from the coordinator.

14          THE COURT:  I'm sorry, can you say that again, I

15    missed that?

16          MR. PRAVDA:  Your Honor, the Court had --

17          THE COURT:  Yes, see that magic light, it makes all

18    the difference.  Go ahead.

19          MR. PRAVDA:  The Court had inquired or requested the

20    parties to review an email from the jury coordinator.

21          THE COURT:  Yes.

22          MR. PRAVDA:  And be prepared to discuss jury

23    selection.

24          THE COURT:  Yes.

25          MR. PRAVDA:  So the parties have largely agreed on

PROCEEDINGS                                        7

1       the scope of the questionnaire.

2                   THE COURT:  Okay.

3                   MR. PRAVDA:  There's one question the defense would

4       like to add that the government objects to.

5                   THE COURT:  What question is that?

6                   MR. RUBERT-SCHEWEL:  I can read the question.

7                   The question, Your Honor, was in our original

8       submission.  It is:  Do you personally know anyone who was

9       killed or injured as a result of a terrorist attack in the

10      United States or elsewhere?

11                  THE COURT:  Why do you want to ask that question?

12                  MR. RUBERT-SCHEWEL:  Your Honor, we believe it is

13      certainly a relevant question to determine whether or not any

14      members of the jury would be prejudiced or --

15                  THE COURT:  Why would it be relevant if someone was

16      killed in Oklahoma City in this case?

17                  Why would it be relevant if someone was killed by

18      the Ku Klux Klan in this case?

19                  MR. RUBERT-SCHEWEL:  The question specifically says:

20      Do you personally know anyone.

21                  THE COURT:  Yes, if my brother was killed in the

22      Oklahoma City bombing, why is that relevant in this case?

23                  The question is absurdly overbroad.  Also as a

24      terrorist, go back to the founding of this republic and there

25      are people who know people who were killed.  All right?  So

PROCEEDINGS                                  8

1    I'm not going to allow that question.

2                MR. RUBERT-SCHEWEL:  Okay.

3                THE COURT:  What else?

4                MR. PRAVDA:  I guess the parties discussed this

5    ahead of time, and we were just wondering how the Court

6    envisioned this working with the Court's usual jury selection

7    practice?  Because obviously the usual selection practice was

8    not involved, the questionnaire, and we were wondering what

9    the Court was thinking?

10               THE COURT:  In what regard are you asking the

11   question.  I don't really understand the question.

12               MR. PRAVDA:  So --

13               THE COURT:  Give me an example as to how you think

14   it might modify my usually laser-like focus in picking jurors?

15               MR. PRAVDA:  So I guess what I'm thinking is the

16   jurors are going to come in on Monday morning.

17               THE COURT:  Right.

18               MR. PRAVDA:  They will receive a copy of this

19   questionnaire.  They will need a little bit of time, it's not

20   a long questionnaire, maybe a half hour, at most to fill it

21   out.

22               THE COURT:  They'll fill it out before they come

23   into the courtroom, right?  I'm sorry, they will fill out the

24   questionnaire before they are brought to the courtroom, right?

25               MR. PRAVDA:  And so --

PROCEEDINGS                                    9

1        THE COURT:  Right?

2        MR. PRAVDA:  -- the parties --

3        THE COURT:  I'm sorry, you're not answering my

4   question.

5        Let me go through this.  Let me -- I'll tell you how

6   it's going to work, and then you tell me if you have any

7   problems with this.

8        Before the jurors are brought into this courtroom,

9   they will have received the questionnaire, they will have

10  filled out the questionnaire, and the Court will have the

11  filled out responses, right?  Yes?

12       MS. MACEDONIO:  I'm with you so far.

13       THE COURT:  Okay.

14       So then what happens?  Then what are you concerned

15  about?

16       MR. PRAVDA:  So I assume that the parties will have

17  copies to review.  But is it the Court's intent to let the

18  jurors go, for example, while the parties review each

19  questionnaire responses, or is it the Court's intent to do a

20  different procedure?

21       THE COURT:  Okay, let me tell you how it's going to

22  work.

23       The jurors are going to get the questionnaire,

24  they're going to fill them out, and the questionnaires will be

25  brought to the court.

PROCEEDINGS                                    10

1          The parties -- again, it's an anonymous jury, so

2     it's just going to be jurors 1 through --

3          What, 150, Mr. Jackson?

4          THE COURTROOM DEPUTY:  130, Your Honor.

5          THE COURT:  130.  Okay.

6          So jurors 1 through 130, and that's how they'll be

7     identified, will have filled out the questionnaire.  And

8     you'll see what their responses are to the questionnaire.

9          Then I will go through my usual jury *voir dire* at

10    30,000 feet, and then I will go through the paddle exercise,

11    which is not to be confused with any X-rated behavior, it is

12    simply, if you have an issue with respect to the following

13    item:

14         Do you know any of the lawyers or the parties to

15    this case?  If so, please raise your paddle now.  And I will

16    call out paddle number 2, 3, 18, 24, 37, whatever it is, thank

17    you.

18         Do you -- have you read anything about this

19    particular case?  And they'll raise their paddles, and I'll

20    call out the numbers.

21         And then, after we go through all the questions that

22    the Court has elected to ask, I will call each jury up by

23    paddle number.  In the past I've had to say don't refer to the

24    names, just the paddle numbers, no one's going to have the

25    name, and then I will call jury number 1 up to the sidebar.

PROCEEDINGS                                    11

1    We'll put on the white noise machine.

2            Why don't you put it on now, Mr. Jackson, so they

3    get a taste of it.

4            THE COURTROOM DEPUTY:  Sure.

5            (Mr. Jackson complies.)

6            THE COURT:  And they will come over to the sidebar,

7    to my left, your right, and I will say to jury number One,

8    Sir, madam, thank you, I see you raised your paddle with

9    respect to questions 8, 12, 18, 37, tell me what your issues

10   are with respect to it?  And they may talk about child care.

11   They may talk about job responsibilities.  They may talk about

12   vacations.  They may talk about having an issue with this type

13   of case.

14           They'll talk about whatever they wish to talk about,

15   and I will listen to what they have to say.  Only the Court

16   asks questions of the potential juror.

17           And after I have spoken with them, I will either

18   excuse them for cause, and they will then, if they are excused

19   for cause, they will be told to go back down to the second

20   floor jury room.  And if they are not excused for cause, at

21   that point they will be told to return to the jury box.

22           And once the process is complete, and we have the

23   full box, the lawyers will then have an opportunity to review

24   their notes and to exercise their peremptory strikes.  And any

25   of you who have tried cases with me before know my process in

1    doing that.

2           And then we will announce the jurors who are excused

3    and, again, also by paddle number, but that's all you're going

4    to have in this case, in any event, it's not entirely

5    different than what I typically do, and those jurors who are

6    excused will be sent back to the second floor jury room, and

7    then we will have our 12 plus four and we will administer the

8    oath to them, and they will be given their jury badges and

9    passes, and there we are.

10          Pretty similar to what I ordinarily do, because I

11   think, as I mentioned before, I try to avoid the opportunity

12   for what my Catholic school nuns referred to as the near

13   occasioned sin, which is to say in the modern era, people

14   reaching out to them through the internet or through

15   inadvertence and having interactions.

16          I try to make all of my juries as close to anonymous

17   as possible because I don't want our jurors to be further

18   burdened.  It's enough of an intrusion on their busy lives to

19   give jury service.  So that's how we're going to do it.  It's

20   going to be pretty smooth, I assure you.

21          MS. SHARKEY:  Sorry, Judge.  When does counsel get a

22   copy of the questionnaire, the filled-out questionnaire?

23          THE COURT:  As soon as it's filled out.  I mean, the

24   jurors aren't going to get here until Monday, right?  They're

25   going to fill it out on Monday, right?

PROCEEDINGS                    13

1          So after they fill it out, you'll get it.  I mean,

2     you can't get it before they fill it out?

3          MS. SHARKEY:  So the clerk's office, I guess, is

4     going to make copies?

5          THE COURT:  Well, I'm not going to do it, and you're

6     not going to do it, and the defendant is not going to do it,

7     and the prosecutors aren't going to do it, so I guess that

8     leaves either the district court executive or the clerk's

9     office.  And if Mr. Corcoran is in a photocopying frame of

10    mind, he'll do it.

11         I mean, the big debate is going to be if my law

12    clerks want double-sided copies or not, because I tend to be

13    old school and as not as environmentally friendly as they are,

14    but then again, you know, they'll probably have more to do

15    with the copying exercise than I do so it will probably be

16    more PC and environmentally friendly than otherwise.

17         MS. SHARKEY:  Thank you, Judge.

18         THE COURT:  Okay.

19         Other questions about this topic?

20         MR. PRAVDA:  Your Honor, it sounds like that process

21    will take most of the day Monday.  In order for the government

22    to be able to arrange the specific travel schedules of its

23    witnesses, we request that we, whatever time we finish Monday,

24    we adjourn at that time and then come back Tuesday morning for

25    opening statements and the government's -- excuse me, the

PROCEEDINGS                                    14

1   commencement of the government's case.

2              THE COURT:  What is the defendant's response to that

3   request that upon the completion of jury selection, whether it

4   takes an hour or whether it takes seven hours, we adjourn for

5   the day?  Are you amenable to that?

6              MS. MACEDONIO:  Yes, Your Honor.

7              THE COURT:  Okay, since both parties are amenable to

8   that, whom am I to disagree.  That's how we'll proceed.

9              Other questions from the government with respect to

10  this topic or other topics?

11             MR. PRAVDA:  So just, I guess, two notes that we

12  want to point out with respect to the trial.

13             We intend -- the government intends to introduce a

14  number of items of evidence through a certification under

15  Federal Rule of Evidence 902(14), and we have given the

16  defense a copy of that certification and provided the required

17  notice under the rule.

18             We've asked defense counsel whether they will object

19  or not for planning purposes.  They've advised us they'll get

20  back to us, which is fine.  I just wanted to put that on the

21  Court's radar so that the Court is aware that we potentially

22  may be making an application to the Court.

23             It works the same way that any other certification

24  would work.  So if it's a business record certification, the

25  Court would determine whether the government's laid the

PROCEEDINGS                                    15

1   appropriate foundation and then decide whether to admit the

2   evidence or not admit the evidence over the defendant's

3   objection.

4            THE COURT:  Well, let me ask you, at this point are

5   you prepared to file the documents that you have provided to

6   defense counsel so the Court will have the benefit of having

7   seen them now as opposed to seeing them some time on Monday?

8            MR. PRAVDA:  I'm happy to do that, Your Honor.

9            The one sort of caveat is that these are audio

10  files, and so what I could do is I could give the Court a copy

11  of the certification, and then I could provide the Court with

12  a disc that contains the audio files as well as some text

13  messages that will all come in through the certification.

14           THE COURT:  You're going to provide to the Court

15  what you've provided to defense counsel, correct?

16           MR. PRAVDA:  Okay.  I can do that today.

17           And I already provided that to defense counsel.

18  I'll give the Court the copy of the same thing.

19           THE COURT:  Any objection to the Court seeing what

20  defense counsel has already seen?

21           MS. MACEDONIO:  Absolutely not.

22           THE COURT:  All right, so that way I'll be in a

23  position, sooner rather than later, to make what passes from

24  have Court as an informed decision, rather than making a

25  decision on the fly, as it were.

PROCEEDINGS                                16

1          So you'll submit that to the Court today, obviously

2     on notice to defense counsel so I'll have what she's having.

3          All right.  What else?

4          MR. PRAVDA:  And then we have also been discussing

5     with defense counsel a number of proposed stipulations, and

6     we're going to continue those discussions, and hopefully the

7     parties will be able to advise the Court on Monday morning.

8          We have streamlined the presentation of evidence,

9     because there are a number of things that we have been able to

10    agree upon.

11         THE COURT:  Well, I always encourage the parties, to

12    the extent they can, stipulate.  You have only to look at me

13    to realize that my ability to streamline has been somewhat

14    limited in my life, but I do the best I can.

15         MR. PRAVDA:  And then the last item, Your Honor,

16    there were certain things that the Court had requested during

17    the conference on Monday that the government get back to you

18    with respect to today.

19         And so one of those issues was the defense's request

20    for immigration documents, and so I'm going to ask Mr. Haggans

21    to address that.

22         THE COURT:  This is the so-called A-File, among

23    other documents; is that correct?

24         MR. HAGGANS:  That's correct, Your Honor.

25         THE COURT:  Okay.  Fire aware.

PROCEEDINGS                          17

1          MR. HAGGANS:  So as a consequence of the Court's

2    request, the government did reach out to Immigration and

3    Customs Enforcement.  We did receive those A-Files earlier

4    today.  We've not yet had the opportunity to review them, but

5    I have discussed with defense counsel prior to this appearance

6    what the government intends to do.

7          Based on the representations made to us by persons

8    at ICE, who are more familiar with the file, it's our

9    expectation that the vast majority of its contents, while we

10   don't think they constitute -- we don't expect them to

11   constitute 3500, or *Brady*, or *Giglio* information that has not

12   been already disclosed to the defense, we expect we're going

13   to be able to take a quick look through those materials, scan

14   them up, and provide them for both the two witnesses.

15         ICE has alerted us that there is a small corpus for

16   each individual that does raise particular law enforcement

17   sensitivities.  I don't know what those sensitivities are

18   right now.

19         What we intend to do is to review those documents,

20   and if they contain 3500*, Brady*, or *Giglio* information that

21   either has not been disclosed or is in some way different from

22   what has already been disclosed, we will find a way to

23   disclose that information; perhaps not in the underlying

24   documents, but a letter or something to that effect.  And that

25   is what the government hopes to complete as expeditiously as

PROCEEDINGS                          18

1   possible.

2          THE COURT:  What is your timetable for completing

3   that?

4          MR. HAGGANS:  I am hopeful it can be completed by

5   the end of the day.

6          THE COURT:  By the end of today?

7          MR. HAGGANS:  By the end of today, Your Honor.  I --

8   I cannot promise that result.  I think given --

9          THE COURT:  But you can promise it will be completed

10  by noon tomorrow, correct?  Or I could order it.  Which would

11  you prefer?

12         MR. HAGGANS:  I will endeavor to complete it by

13  today, but I will complete it by noon tomorrow.

14         THE COURT:  I'll order it to be completed on or

15  before noon tomorrow so there's no confusion about what the

16  deadline is.

17         And then when you receive it, defense counsel, on or

18  before noon tomorrow, if you're satisfied with it, then you're

19  satisfied with it and you don't have to tell the Court you're

20  satisfied with it; if you're satisfied with it, you're

21  satisfied with it.

22         If you're dissatisfied with it, you have an

23  obligation to tell the Court promptly what it is you're

24  dissatisfied about and what you would suggest be done.  I will

25  read your objections, if you will, and the government will

1  respond, and then I will rule.

2           MS. MACEDONIO:  Thank you, Your Honor.

3           MS. SHARKEY:  Thank you, Judge.

4           THE COURT:  You're welcome.

5           MR. PRAVDA:  That's it from the government today,

6  Your Honor.

7           THE COURT:  All right.

8           Anything else from defense counsel?

9           MS. SHARKEY:  Judge, we have just one issue that we

10  need the Court's decision on.

11           THE COURT:  Yes.

12           MS. SHARKEY:  We've been provided with a witness,

13  Agent Ryan Singer, who is integral to the investigation.

14           The government is calling him for a particular

15  portion of the event, primarily, I believe, based on the

16  disclosure that they gave to us, the arrest of Saidakhmetov at

17  the airport.

18           The government has only provided us with the 3500

19  material that pertains to the arrest at the airport.  We

20  object to that.

21           THE COURT:  What do you want that they haven't given

22  you?

23           MS. SHARKEY:  We want his full 3500 material in

24  relation to this investigation.

25           THE COURT:  What do they -- what do you want that

PROCEEDINGS                                                    20

1    they have not given you?  You told me -- you've characterized

2    it --

3            MS. SHARKEY:  Okay.

4            THE COURT:  -- what do you think you're not getting?

5            MS. SHARKEY:  Every 302 in which he participated in

6    during the course of this investigation.

7            THE COURT:  Regarding any and all defendants?

8            MS. SHARKEY:  Yes.

9            THE COURT:  What is your response to that request?

10           MR. PRAVDA:  Your Honor, that goes beyond what

11   18 U.S.C. 3500 requires the government to do.

12           Miss Sharkey correctly advised the Court, as we

13   informed her, that we intend to call Agent Singer for the

14   limited purpose of testifying about the arrest of codefendant,

15   Saidakhmetov at JFK Airport on February 25th, 2015, and the

16   fact that when Saidakhmetov was searched, $1600 was recovered

17   from his pocket.

18           As the Court will recall, that's money that the

19   defendant handed to Saidakhmetov earlier that evening at the

20   airport.  That's the only purpose for which we're calling

21   Agent Singer.  The subject matter of the testimony will

22   encompass merely a 20-minute period, perhaps less, on

23   February 25th, 2015.

24           So 18 U.S.C. 3500(b) specifically states that the

25   government is to produce any statement that the witness in the

PROCEEDINGS                                    21

1   possession of United States which relates to the subject

2   matter as to which the witness has testified.

3            And I've done a little cursory research after

4   Ms. Sharkey raised this issue yesterday with the government,

5   and it's clear from the case law that that section of 3500(b)

6   is limited to exactly what it says, the subject matter of the

7   witness' testimony, not broader information about the case

8   which is on trial or anything like that.

9            THE COURT:  All right.  Well, I'll tell what you I

10  will do.  I will allow the parties, if you wish, to brief that

11  particular issue.  You have until 5:00 today to submit

12  simultaneous briefs on the issue.

13           It seems to be a fairly narrow and focused one, if

14  you're talking about this one agent and what he did, and I

15  will take your submissions under advisement and I will issue a

16  ruling.

17           I gave you guys a noon tomorrow deadline, and I'll

18  impose that on myself, and more importantly on my law clerks.

19  So we will issue a decision.

20           If you wish to brief it today, get the briefs in by

21  5.  I will promise you a written decision with respect to that

22  application by noon tomorrow on that issue for that agent.

23           Okay?

24           MS. SHARKEY:  Understood.

25           THE COURT:  Okay.  Other items?

PROCEEDINGS                              22

1              MS. MACEDONIO:  May we have one moment, Your Honor.

2              THE COURT:  Of course.

3              (Pause.)

4              MS. MACEDONIO:  We're fine, Your Honor.  Thank you

5    very much.

6              THE COURT:  Thank you, Miss Macedonio.

7              Thank you, Miss Sharkey.

8              Thank you, gentlemen.

9              Is there anything else?

10             MR. HAGGANS:  Not from the government, Your Honor,

11   thank you.

12             THE COURT:  Very well.  I look forward to receiving

13   your briefs, and I look forward to seeing you on Monday

14   morning at 9:30 a.m.

15             MS. MACEDONIO:  Just one additional question.

16             THE COURT:  Ah, Columbo, just one more.

17             MS. MACEDONIO:  Just one more.

18             THE COURT:  Yes, go ahead.

19             MS. MACEDONIO:  Will we be sitting on Fridays, Your

20   Honor?

21             THE COURT:  Oh, yes.  Yes.

22             MS. SHARKEY:  Actually, another question.

23             Do you run the calendar, the trial through 5:00;

24   9:30 to 5 every day?

25             THE COURT:  Brutally.

PROCEEDINGS                                    23

1          MS. SHARKEY:  Okay.

2          THE COURT:  Ruthlessly starting at 9:30, and even

3    more ruthlessly ending the day at 5, no matter what brilliant

4    examination is in medias res, to use the Latin phrase, and I

5    apologize in advance for cutting you off just as you're about

6    to come to your momentous brilliant point at 5:00 on any given

7    day, but you'll have to hold that thought until the next

8    morning.

9          Because see that big clock there?  The jurors will

10   be looking right at that clock, and at about ten minutes to 5,

11   the jurors will start looking at me to see if I'm going to

12   keep my promise to them.  I always keep my promises to my

13   juries.  They love me.  And that's why.

14         MS. SHARKEY:  All right.  Thank you, Judge.

15         THE COURT:  Very well.  Anything else?

16         MR. PRAVDA:  Nothing else.  Thank you, Your Honor.

17         THE COURT:  Thank you.  We're adjourned.

18

19         (Whereupon, the matter was concluded.)

20

21                  *     *     *     *     *

22   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
23

24   s/ Linda D. Danelczyk                September 15, 2019

25      LINDA D. DANELCZYK                     DATE

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*