1

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------x
                            15-CR-95(WFK)
3   UNITED STATES OF AMERICA,
                            United States Courthouse
4         Plaintiff,        Brooklyn, New York
5         -against-         September 11, 2019
                            2:00 p.m.
6   DILKHAYOT KASIMOV,
7         Defendant.
8   ------------------------------x
9      TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
        BEFORE THE HONORABLE WILLIAM F. KUNTZ, II
10            UNITED STATES DISTRICT JUDGE
11  APPEARANCES
12  For the Government:    UNITED STATES ATTORNEY'S OFFICE
                        Eastern District of New York
13                   271 Cadman Plaza East
                        Brooklyn, New York 11201
14                   BY:  DOUGLAS M. PRAVDA
                          MATTHEW HAGGANS
15                   Assistant United States Attorneys
16  For the Defendant:     ELIZABETH E. MACEDONIO, P.C.
                        40 Fulton Street - 23rd Floor
17                   New York, New York 10038
                        BY:  ELIZABETH E. MACEDONIO, ESQ.
18
                        KELLEY J. SHARKEY
19                   26 Court Street - Suite 2805
                        Brooklyn, New York 11242
20                   BY:  KELLEY J. SHARKEY, ESQ.
21
22
23
24
25

PROCEEDINGS                                    2

```
 1
                          LORD & SCHEWEL
 2                        233 Broadway - Suite 2220
                          New York, New York 10279
 3                        BY:  ABRAHAM RUBERT-SCHEWEL, ESQ.

 4

 5   Also Present:        SANJAR BABADJANOV, INTERPRETER

 6   Court Reporter:      LINDA D. DANELCZYK, RPR, CSR, CCR
                          Phone:  718-613-2330
 7                        Email:  LindaDan226@gmail.com

 8
     Proceedings recorded by mechanical stenography.  Transcript
 9   produced by computer-aided transcription.

10

11                  *    *    *    *    *

12

13          (In open court.)

14          THE COURTROOM DEPUTY:  All rise.

15          The Honorable William F. Kuntz, II is now presiding.

16          Criminal cause for status conference, Docket Number

17   15-CR-95, U.S.A. versus Kasimov.

18          Counsel, please state your appearances for the

19   record.  Spell your first and your last name for the court

20   reporter, and the previously sworn Uzbek interpreter.

21          MR. PRAVDA:  Good afternoon, Your Honor.  Doug

22   Pravda and Matthew Haggans for the United States.  That's

23   D-O-U-G, P-R-A-V-D-A, Pravda and Matthew Haggans,

24   M-A-T-T-H-E-W, H-A-G-G-A-N-S.

25          THE COURT:  Good afternoon, counsel.  You may be
```

PROCEEDINGS                          3

1    seated.

2              MS. MACEDONIO:  Good afternoon, Your Honor.

3    Elizabeth Macedonio for Mr. Kasimov.  E-L-I-Z-A-B-E-T-H,

4    M-A-C-D-E-O-N-I-O.

5              MS. SHARKEY:  Good afternoon, Judge.  Kelley

6    Sharkey, K-E-L-L-E-Y, S-H-A-R-K-E-Y, for Mr. Kasimov.

7              THE COURT:  Good afternoon.

8              And, counsel, with you is mister?

9              THE INTERPRETER:  Sanjar Babadjanov.  S-A-N-J-A-R,

10   B-A-B-A-D-J-A-N-O-V.

11             THE COURT:  Thank you.

12             You're the Uzbek interpreter previously sworn?

13             THE INTERPRETER:  Yes.

14             THE COURT:  You may be seated.

15             And also with you at counsel table is?

16             MR. RUBERT-SCHEWEL:  Abraham Rubert-Schewel,

17   A-B-R-A-H-A-M, R-U-B-E-R-T, hyphen, S-C-H-E-W-E-L.  Good

18   afternoon.

19             THE COURT:  Good afternoon.

20             And also with you at counsel table is?

21             MS. MACEDONIO:  Mr. Kasimov.

22             THE COURT:  We can't have him without the pranks.

23             All right, this is a status conference that was

24   requested by the parties.

25             I'll hear from the government first as to why we're

PROCEEDINGS                              4

1    here, and then from defense counsel.

2              MR. PRAVDA:  Your Honor --

3              THE COURT:  You may remain seated, Mr. Pravda, just

4    pull the microphone towards you, sir.

5              MR. PRAVDA:  Thank you.  Thank you, Your Honor.

6              The conference was actually requested by

7    Ms. Macedonio.  She has discussed with us in advance of this

8    conference what she wishes to raise, but I think it's

9    appropriate for the government to defer to her.

10             THE COURT:  Well, in that case, the deferral is

11   acceptable to the Court.

12             Ms. Macedonio, would you be so kind as to tell us

13   why we're here?

14             MS. MACEDONIO:  Yes, Your Honor.

15             Pursuant to some discussions that we had, or the

16   defense team had with Mr. Kasimov, we believed there was a

17   possibility that the case would be disposed of.

18             We communicated that to the government.  They

19   furnished us with a plea agreement, a written plea agreement,

20   which we reviewed with Mr. Kasimov here in the courthouse

21   today.

22             He has advised us that he has rejected the terms of

23   this plea agreement and wishes to proceed to trial.

24             THE COURT:  Yes, so we will dispose of the case at

25   trial.

PROCEEDINGS                        5

1          MS. MACEDONIO:  At trial.

2          THE COURT:  Excellent.

3          MS. MACEDONIO:  I just do you think it's important

4    to note for the record that this was not the first time that

5    we had discussed disposing the case with Mr. Kasimov.

6              During the course of my representation, we've had

7    numerous conversations with the attorneys for the government

8    about various ways to dispose of this case.  All of those

9    discussions have been communicated to Mr. Kasimov.

10             This is, however, the first time that we've received

11   a written plea agreement.  That, however, did not prevent us

12   from discussions about resolving the case short of trial.

13             And I just want the record to reflect that we did

14   indeed communicate the various options to dispose of the case

15   previous to today.

16         THE COURT:  Ms. Macedonio is distinguished and

17   experienced counsel, who has appeared before me many times,

18   and Miss Sharkey has as well, and I am certain that you would

19   have done nothing less as officers of the Court, and I am

20   completely comfortable in your representations, and I'm sure

21   the prosecution would confirm that indeed from their point of

22   view, everything that they've communicated to you I'm sure has

23   been communicated to your client.

24         MS. MACEDONIO:  And, Your Honor, I think I may have

25   misspoken that there was one previous written plea agreement,

1   and we did receive an additional one today, which we have

2   reviewed with Mr. Kasimov.  So I just wanted to make that

3   record clear.

4           We also have reviewed the plea agreement with

5   Mr. Kasimov.  We have advised him as to that his potential

6   exposure is at the trial as compared to what is contained in

7   the plea agreement.  And I just wanted to make that record as

8   well.

9           THE COURT:  All right.  I take it, then, that to use

10  baseball parlance, there's an old saying:  It ain't over 'til

11  it's over with respect to pleas.

12          I take the parties are telling this Court that with

13  respect to the possibility of a plea, it's over, or is it not

14  yet Monday morning at 9:30 a.m.?

15          MS. MACEDONIO:  Well, it's not yet Monday morning at

16  9:30 a.m., Your Honor, so...

17          THE COURT:  Well, I was concerned.  I'm an old Wall

18  Street guy, there's 24 hours in a day, so as far as I'm

19  concerned, if the parties wish to continue their discussions

20  and my limited role under Rule 11 and the Federal Rules of

21  Criminal Procedure, absent a Rule 11(c) situation, I don't get

22  involved in plea negotiations.  I appreciate you making your

23  record.

24          I'm sure Mr. Kasimov knows he's in the hands of

25  excellent counsel, and I'm sure they're advising him fully and

PROCEEDINGS                              7

1   completely with respect to his options, and the presumption of

2   innocence, obviously, stays with him throughout this entire

3   process.

4            So I live to serve.  I'm here.  We're next scheduled

5   to have a status conference at 10 a.m. on Thursday of this

6   week, and we are scheduled to commence trial.  If there is no

7   consensual resolution between the parties at 9:30 a.m. on

8   Monday, then we will kick and go.

9            The Court will issue the appropriate rulings that

10  remain to be issued between now and the conclusion of the

11  status conference, which begins at 10 a.m. on Thursday, and

12  the parties will be good to go, right?

13           MS. MACEDONIO:  Yes.

14           MS. SHARKEY:  Yes, Your Honor.

15           MR. PRAVDA:  Yes.

16           Your Honor, if I may add one thing --

17           THE COURT:  Of course.

18           MR. PRAVDA:  -- to what Ms. Macedonio said.

19           I'll just note, again, just for the record, that

20  when the government had in the past discussed offers, and

21  potential offers, either with Ms. Macedonio or Ms. Sharkey,

22  they've always gotten back to the government to communicate

23  the defendant's position with respect to those offers.

24           In each instance of the formal offer, the response

25  was conveyed that the defendant had rejected that offer.

PROCEEDINGS                                    8

1          THE COURT:  I understand that to be the case, and I

2     commend all counsel, because you're excellent officers of the

3     court and excellent attorneys, and I am delighted to be the

4     Article III Judge who is handling this case, whether it

5     resolves by way of trial or otherwise.

6          MS. MACEDONIO:  Your Honor, I believe that my client

7     wishes to address the Court directly.

8          THE COURT:  I would be honored to hear from him,

9     if -- and, again, I never invade the province of

10    attorney/client, so if your counsel has now told me that you

11    wish to advise the Court, I'm not going to ask you whether

12    she's asked you if that was a good idea or not, or advised you

13    if it was a good idea or not, that's between you and your

14    counsel, but I'm certainly willing to hear you, sir.

15         If you're going to speak through the interpreter, I

16    will ask you to tell the interpreter and then the interpreter

17    will speak into the microphone, or if you wish to speak to me,

18    I apologize, it will have to be in English, but that's the way

19    it goes in federal court.  So go ahead.

20         THE DEFENDANT:  Okay.

21         MR. PRAVDA:  Your Honor, before Mr. Kasimov begins,

22    should the Court advise him that anything he says could be

23    used against him at the trial?

24         THE COURT:  I'm sure your counsel has advised you,

25    sir, but let me advise you on the record, as the prosecution

PROCEEDINGS                                    9

1   has suggested it would be appropriate, in the super abundance

2   of caution that:  Anything you say can be used against you,

3   and probably would be used against you, in the trial of the

4   action against you.

5            So think now before you speak.

6            THE DEFENDANT:  (In English.)  Your Honor, I want to

7   let you know we having irreconcilable differences with my

8   attorneys, and it's possible to appoint another attorney so I

9   could proceed to trial?

10           It's --

11           THE COURT:  Well, irreconcilable differences on the

12  eve of trial are indeed significant.

13           You have two of the best attorneys in the country

14  who are representing you, and that's just not my view, that's

15  the view of virtually all the judges in federal court,

16  certainly in this district.  They are legendary for their

17  quality.

18           And while one can have a difference of opinion with

19  the greatest lawyer in the world, it's up to you, you're the

20  client.  It's not always necessarily the wisest thing to do.

21  I'm telling you flat out that you have a right to counsel of

22  your choice, but here we are on the eve of trial.

23           How many years has your counsel represented you?

24           THE DEFENDANT:  Three-and-a-half years.

25           THE COURT:  Three-and-a-half years.

PROCEEDINGS                                    10

1          THE DEFENDANT:  Yes.

2          THE COURT:  So what I'm prepared to do, if you would

3  like, is to add counsel to the team as we go to trial on

4  Monday, but certainly you have two of the best lawyers in the

5  known universe at your side with three-and-a-half years in the

6  case, and the government's ready to try the case.

7          And it seems to me that if you want me to appoint

8  additional CJA counsel, I will do that, but I'm not going to

9  delay the trial because that might smack of inappropriate

10  gamesmanship with the Court, and this Court won't have that.

11          So I'll give you another lawyer.  Maybe two.  But

12  you've got two of the best lawyers in this country who worked

13  on this case with you for five years, give or take, four and a

14  half, whatever it's been, and to make this application,

15  virtually on the eve of trial, I think is something that can

16  be addressed by appointing other terrific lawyers, who are CJA

17  lawyers, who will be present at counsel table, but I don't see

18  any reason to adjourn the trial.

19          They're experienced lawyers.  You've been with them

20  three-and-a-half years.  This is the first inkling of any

21  issue.  You've had plea negotiations, which this Court has not

22  been party to, obviously, back and forth, and it's just not

23  appropriate to engage in, unfortunately, what might be deemed

24  as gamesmanship.

25          That being said, I will definitely appoint other

PROCEEDINGS                           11

1    counsel to your team.  And you will have not only two of the

2    best lawyers in the country, you'll have one or two more great

3    lawyers added to the team.  But we're going to trial on Monday

4    at 9:30.  We're not going to adjourn the trial.

5           I'll give you another lawyer.  I'll give you another

6    two lawyers.  I'll give you another three lawyers.  They'll be

7    really good.  They'll be really experienced.  They won't be as

8    good as the two lawyers you got but, hey, you know.

9           Look, I practiced law for 33 years.  I was often

10   hired and often fired.  I get it.  I was a pretty good lawyer.

11   And sometimes the people who fired me later said, you know,

12   I'm glad we fired you because we did better without you.

13   Sometimes they said, you know what, maybe that wasn't our best

14   decision.  And I've been in cases where other lawyers have

15   been added to work with me.

16           So I've been there.  Practiced law for 33 years

17   before I was on the bench.  So I get it.

18           But the truth is, they're great lawyers.  They've

19   worked with you for three-and-a-half years.  They know your

20   case.  They know these prosecutors.  They have tried cases

21   against these prosecutors.  Sometimes they win.  Sometimes

22   they lose.  But they're very good.  You've got the A team on

23   both sides.

24           And the A team on both sides, perhaps augmented with

25   one, two, or three more lawyers on your team will be trying

1   this case, in this courtroom on Monday morning at 9:30.

2          So if you want me to add lawyers, I will add them.

3   I will add –– Mr. Jackson will enter the order and they'll be

4   over –– it's 20 minutes to 3, they'll be over as soon as they

5   can get over; work with your distinguished counsel for

6   four-and-a-half years, and be here tomorrow morning for the ––

7   Thursday morning for the status conference, and they'll meet

8   with you Thursday, Friday, Saturday, Sunday.

9          It's going to be a great, great trial because you

10  have great lawyers on both sides.  And we have very wonderful

11  law clerks, a first rate courtroom deputy, and we're ready to

12  go, and so will you be.

13         So your application to add lawyers is granted, and

14  we will add them.

15         THE DEFENDANT:  Your Honor, sorry.

16         THE COURT:  Okay, no problem.

17         THE DEFENDANT:  But the reason why I'm asking is

18  with them we are not really ready for trial and ––

19         THE COURT:  Oh, I bet you are.

20         THE DEFENDANT:  One of the reasons is I would have

21  problems with investigator and so we didn't really work with

22  investigator, and I think Mr. Investigator did correct

23  investigation about this.

24         I informed my attorney, Ms. Macedonio, last year,

25  and I have a copy of the email, if you want me to show you,

PROCEEDINGS                                    13

1    and she agreed with me that Mr. Ron Dwyer, the investigator

2    wasn't doing his job well, so she told me she's going to have

3    another investigator, but we never got the investigator.

4         And now I don't know how we going to trial without

5    witnesses to defend me, to bring the witnesses, and we don't

6    even have any evidence in our hand to represent to the family.

7    So that's why I'm asking, if possible, to give me another

8    lawyers and give me a little more time to prepare the case.

9         THE COURT:  I find it hard to believe that

10   Ms. Macedonio and Ms. Sharkey, two of the most experienced and

11   successful lawyers in this court, have failed to prepare this

12   case for trial and are not in a position to defend the case

13   for trial.

14        It was one thing for you as a client to say you

15   would like to have additional lawyers added to the team, it's

16   another to say that these two distinguished counsel have not

17   done their jobs in getting the case ready for trial.

18        Quite candidly, that does not strike the Court as a

19   credible assertion, knowing what I know about these lawyers

20   and having seen the effort that they've put into this case.

21   They just don't roll that way, to put it colloquially.  When

22   they say they are ready to go to trial, they are ready to go

23   to trial.

24        Now, you may say want another lawyer added to the

25   team, or two lawyers added to the team, that's one thing, but

PROCEEDINGS                                    14

1    to say that Ms. Macedonio and Ms. Sharkey are not ready to try

2    a case strikes me as the equivalent of saying, to use an

3    analogy from fictional lawyers, that Perry Mason doesn't know

4    how to try a criminal defense case.  You may not know who

5    Perry Mason is, but trust me, he knew how to try a criminal

6    defense case.  So did Matlock.  It's just not credible.

7         So if they were to tell me that they are not ready

8    to defend you, that would surprise me.  And if they say that,

9    then I'll listen and perhaps have a different response.

10        But knowing them as I do as officers of the court, I

11   don't think they are going to say that they're not ready to

12   try the case when they've indicated that they are ready to try

13   the case and they have the stellar representation so richly

14   deserved.

15        So I'll give you another lawyer or two at public

16   expense.  That's no problem.  And that lawyer will be here

17   tomorrow morning and will work with you, and work with your

18   distinguished counsel.

19        But it's just not credible to say that they're not

20   ready to try the case, unless they tell me they're not ready

21   to try the case, and I don't hear them saying that.

22        THE DEFENDANT:  You know, basically I was thinking

23   the same way, that's why I asked a few weeks ago from

24   Ms. Sharkey.  Basically I met already with one lawyer in MDC.

25   She came to visit me.

PROCEEDINGS                                    15

1          And my family was -- you know the mentality and

2    culture we have, I'm from different country, and my family is

3    stressing about me, and they believe because the lawyers are

4    not paid from my family and the government give, they

5    believe -- this is like culture and mentality, and they

6    believe they don't care to do their best to defend me, so my

7    family was trying to find for me another lawyer.

8          So because of that, I already had meeting with one,

9    another lawyer, and I talked about that to Ms. Sharkey, and if

10   wrong to Ms. Macedonio or so, and I ask them if -- because

11   when this lawyer came to me, she checked the case and she said

12   trial is coming soon so she can't just take the case over and

13   go by herself.

14         But she also suggested if it was possible to put her

15   in the case, she will help me and to -- to my lawyers and --

16   but when I discuss this topic also with Ms. Sharkey, the

17   response was, I don't know if she ever asked from you, but she

18   said judge is not going to put another lawyer, you already

19   have three lawyers.

20         THE COURT:  I will add -- to cut to the chase,

21   without getting into whatever attorney/client communications

22   you had, if there's another lawyer who wishes to note his or

23   her appearance in this case, and they're admitted to the bar

24   and this court and in good standing, or they can be admitted

25   on a pro hac vice basis, sure, they can join the team.  But --

PROCEEDINGS                                    16

1    no, but you're not hearing me.

2              The culture that you find yourself in is the culture

3    of the United States of America in a criminal trial where you

4    are a defendant.  You've been a defendant for many years, and

5    where you've been defended by, among others, two of the best

6    lawyers in this country.  So you are going to trial on Monday

7    of next week, if you do not come to another resolution of this

8    case.

9              I will add whatever lawyers were admitted to this

10   court who come before the Court and file a notice of

11   appearance; whether or not that lawyer is good, bad, or

12   indifferent, time will tell.  But you've got two great lawyers

13   sitting beside you who have worked with you for years, and we

14   are on the eve of trial, and I'm not going to listen

15   sympathetically to fairytales about conversations with

16   unidentified lawyers who you think in some cultural way are

17   more appropriate.

18             You may like them more.  They may be as good as

19   Macedonio and Sharkey.  I doubt that they are.  I doubt that

20   they're better, but maybe they are.

21             And if they want to come here and appear, have them

22   file a notice of appearance and come to the conference

23   tomorrow and come before the Court, subject to the

24   responsibilities of attorneys in this court.

25             But we don't play games here.  You're going to trial

1    on Monday morning.  And if you want to have this other lawyer

2    or lawyers join the team, if they're going to be privately

3    retained, fine.  If they need CJA funds, and they're on the

4    CJA list, I will appoint them.  That is fine.  Criminal

5    Justice Act, that's what it stands for.  But we don't play

6    games here.  I'm not going to tolerate it.  I'm not.

7             So you decide how you wish to proceed.  You have two

8    of the best lawyers in this country.  And so if you want to

9    add to your team, great.  Privately retained lawyer, admitted

10   in this court, he or she or they should file a notice of

11   appearance and be here tomorrow 10 a.m. for the conference,

12   great.  CJA lawyer, if you can't afford one, you want one

13   appointed, or two appointed, I'll add to your team.  I'll do

14   that.

15            But let's be very clear.  Trial starts Monday

16   morning at 9:30, unless there is some other resolution prior

17   to that time; in three-and-a-half years, eve of trial, I'm not

18   doing that.

19            You don't jerk this judge around.  Nobody does.  So

20   that's my ruling.

21            Anything else?

22            MS. MACEDONIO:  Not from the defense.  Thank you,

23   Your Honor.

24            THE COURT:  Anything else from the government?

25            MR. PRAVDA:  Not from the government, Your Honor.

PROCEEDINGS                                    18

1          THE COURT:  Okay, we'll see you at 10 a.m.

2          And have a good evening.  Thanks.

3          (Pause.)

4          THE COURT:  Go back on the record.

5          Do you want to say something else on the record?

6     We're going to trial on Monday morning.

7          THE DEFENDANT:  Yes, Your Honor.  I had -- basically

8     I had prepared something, but I didn't have a chance to send

9     it to you.

10         THE COURT:  Give it to your lawyers and they'll file

11    it with the Court.  That's how we roll.  They can file

12    anything.  Give them a letter, they can file it.  They can

13    file it as a public document.  They can file it under seal.

14    They can file it however it's deemed to be appropriate.

15         Give it to your lawyers, you're represented by

16    counsel.  I haven't seen the letter.  And if it's appropriate

17    for the Court to see it, I'll see it.  If it's an ex parte

18    basis, if that's appropriate, fine; under seal, fine; whatever

19    it is, your counsel will review it and file it with the Court

20    in the appropriate fashion.

21         They know how to file letters, they've been doing it

22    a lot longer than I've been a judge.

23         Yes.

24         MS. MACEDONIO:  Your Honor, might we have a short

25    recess?  I think...

PROCEEDINGS                    19

1          THE COURT:  You can have a recess for as long as you

2    like.

3          MS. MACEDONIO:  Thank you, Your Honor.

4          THE COURT:  I'm appointed for good behavior.

5          MS. MACEDONIO:  It would be helpful if we can speak

6    in the back with Mr. Kasimov.

7          THE COURT:  If you want to speak in the back, that's

8    fine.  I'm happy to have an adjournment, however you want to

9    do this.  Do you want to go to the back with him, or do you

10   want me to go back to chambers?  You want the government to

11   stay here?  What logistically works?

12         MS. SHARKEY:  We would like to figure out what's

13   going on with Mr. Kasimov.

14         MS. MACEDONIO:  Before the end of the day.

15         MS. SHARKEY:  So if we can talk to him in the back.

16         THE COURT:  You can talk with him for as long as you

17   like.

18         MS. SHARKEY:  Thank you.

19         THE COURT:  I will be here.  The marshals, I'm sure,

20   will accommodate my slow and deliberate jurisprudence.  With

21   all deliberate speed, we deliver justice as I continue to

22   await my 40 acres and a mule.  I know it's tough.

23         MS. SHARKEY:  Thank you, Judge, we will -- we think

24   there's a little misunderstanding here, so we just would like

25   it cleared up and we'll be back.  We'll be back.

PROCEEDINGS                                    20

1        THE COURT:  Words to live by.

2        Is that acceptable to you, Mr. Pravda?

3        MR. PRAVDA:  Your Honor, I don't know how long this

4    break would be.  Would it be possible for counsel to reach out

5    to us when they're ready to go back on the record and then

6    we'll come back?

7        THE COURT:  Would you like the government lawyers to

8    sit and wait, or would you like to -- you have their numbers,

9    I know you do.  You will call them?

10       What do you think is most appropriate?

11       MS. SHARKEY:  We think we'll save everybody time if

12   you give us 15 minutes.

13       MR. PRAVDA:  Okay, so come back in 15 minutes.

14       THE COURT:  Come back, or sit here for 15 minutes?

15       MS. SHARKEY:  Come back in 15 minutes.

16       THE COURT:  All right, we're adjourned for 20

17   minutes.

18       MS. SHARKEY:  Okay, thank you, Judge.

19       THE COURT:  So everyone can make respective comfort

20   stops.

21       MS. SHARKEY:  Thank you.

22       THE COURT:  See you in 20 minutes.

23       MR. HAGGANS:  Thank you.  Your Honor.

24       THE COURT:  Of course.

25       (Whereupon, a recess was taken at 2:48 p.m.)

PROCEEDINGS                    21

1          THE COURTROOM DEPUTY:  All rise.

2          The Honorable William F. Kuntz, II is now presiding.

3          THE COURT:  The appearances are the same as were

4    noted before the break.  You may be seated.

5          We'll wait for the defendant to be produced.

6          (Defendant enters the courtroom.)

7          THE COURT:  All right, counsel, do we have a report

8    for the Court?

9          MS. MACEDONIO:  Yes, Your Honor.

10         We had the opportunity to meet further with

11   Mr. Kasimov.  We appreciate the Court's time in allowing us to

12   do so.

13         I think that there were some fundamental differences

14   that we've worked out.  Mr. Kasimov would like to proceed with

15   us as counsel.  He does not have an interest in adding an

16   additional attorney at this point.

17         We would, however, ask the Court for permission to

18   add a paralegal to the team.

19         THE COURT:  Granted.

20         MS. MACEDONIO:  Thank you, Your Honor.

21         And also, since we are going to be in the courthouse

22   tomorrow, the terms of the protective order do not allow us to

23   give Mr. Kasimov the 3500 material.

24         We'd like to adopt a procedure where we can bring in

25   paper copies of the 3500 material, have Mr. Kasimov review it,

PROCEEDINGS                          22

1    either up here or downstairs in the marshal's pens, and then

2    retrieve that 3500 material so that he doesn't lose the whole

3    day in not being able to review the 3500 material.

4            THE COURT:  What is the government's response to the

5    request to defense counsel?

6            MR. PRAVDA:  Your Honor, the government has no

7    objection.

8            I believe the protective order that the Court signed

9    specifically permits the defendant to review in this

10   courthouse.  And we trust defense counsel to collect all of

11   the materials that are given to him before he is returned to

12   MDC.

13           THE COURT:  Do you have a view to use the PBS

14   upstairs, downstairs, does it matter to you, whether he

15   reviews them on this level of the courthouse or downstairs?

16   Does it matter?

17           MR. PRAVDA:  No opinion, Your Honor.

18           THE COURT:  Okay.  Well, it's up to you,

19   Ms. Macedonio, and, Ms. Sharkey, as to where that review is

20   conducted, whatever you and your client find most efficient,

21   you're welcome to conduct the review here.

22           Other than this conference tomorrow, Mr. Jackson, do

23   we anything else scheduled in this space?

24           THE COURTROOM DEPUTY:  No, Judge.

25           THE COURT:  So to use the well-known phrase, *mi casa*

PROCEEDINGS                                    23

1    *su casa*, if you want to sit here and do it tomorrow, you can

2    do it right here in this space.  If you want do to it

3    downstairs, you can do it in that space.  If you want to

4    split, you can do it.

5           It's subject to, obviously, what the marshals

6    require in terms of your security needs, but you're welcome to

7    use this space.  You'll have it properly secured.

8           MS. SHARKEY:  Thank you.

9           THE COURT:  You're welcome.

10          What else can I help you folks with this afternoon?

11          MS. MACEDONIO:  Your Honor, I understand that the

12   government has dropped off a hard drive at the MDC of the

13   phone dump of Mr. Kasimov's phone.

14          We would request some assistance with the Court in

15   Mr. Kasimov being able to view the contents of that hard drive

16   on the unit.  There are separation orders in place that would

17   prohibit him from going to the law library.  And also with the

18   trial date rapidly approaching, we would ask if the Court

19   assist with us with the MDC in allowing that hard drive to go

20   to Mr. Kasimov's unit so that he could review the contents of

21   the hard drive.

22          THE COURT:  A man's got to know his limits, so I'm

23   afraid telling the MDC what to do is, unfortunately, way

24   beyond my limits.  I can always ask, but then again I continue

25   to ask for my 40 acres and a mule, and you can see how far

PROCEEDINGS                              24

1    that's gotten me.

2              Certainly in terms of accessibility here in this

3    courtroom space, to the extent you and the government and

4    marshals can work out appropriate mechanics, as I said, you

5    have the use of this space in this courtroom tomorrow for the

6    full day.

7              So if that's of any assistance, fine.  But once you

8    start talking about reviewing items in the land of the MDC,

9    you are beyond my reach, because they're beyond my command, to

10   be candid.

11             MS. MACEDONIO:  If the Court could make an inquiry,

12   that certainly would go a long way.

13             THE COURT:  I can make a request.

14             MS. MACEDONIO:  Thank you.

15             THE COURT:  But as I said, I've also requested my

16   40 acres and a mule, so they do what they will do.

17             What else can I help you folks with today?

18             MS. MACEDONIO:  May I have one moment?  I just want

19   to make sure I don't forget.

20             THE COURT:  Of course.

21             (Pause.)

22             MS. MACEDONIO:  Your Honor, there's nothing further.

23             Oh, I'm sorry, there is one thing that the court

24   reporter reminds me of.

25             The defense will be requesting daily copy during the

1    course of the trial and for this week's proceedings as well.

2              THE COURT:  And do you have an application with

3    respect to that?

4              MS. MACEDONIO:  Yes.  My application is that the

5    Court grant us the funding to be able to get the daily copy

6    from the court reporters.

7              THE COURT:  Granted.

8              You said you would be requesting them, but you

9    didn't ask me.

10             And that was implicit, but I just like to make

11   things explicit for my friends on the 17th floor.

12             Yes, your application is granted.

13             And it might be helpful if you and the government,

14   to the extent we talked about these matters today, have a

15   written stipulation and order as to what's been agreed to,

16   that I will happily sign tomorrow with respect to the 3500

17   material and the phone access and the library and all the

18   other good things that you talked about today, otherwise you

19   can put them on the record tomorrow.

20             MS. MACEDONIO:  Thank you, Your Honor.

21             MS. SHARKEY:  Thank you very much, Judge.

22             THE COURT:  Is that clear?  You seemed a little bit

23   puzzled by my comment.

24             MR. HAGGANS:  I'm sorry, Your Honor, I was

25   consulting with my colleague.

PROCEEDINGS                                    26

1              It is, Your Honor.

2              THE COURT:  Okay.

3              So 10 a.m. tomorrow here?

4              MR. PRAVDA:  Yes, Your Honor.

5              THE COURT:  Excellent.  Thank you.

6              We're adjourned.  See you tomorrow.

7

8              (Whereupon, the matter was concluded.)

9

10                  *     *     *     *     *

11

12

13   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

14

15       s/ Linda D. Danelczyk              September 13, 2019

16        LINDA D. DANELCZYK                      DATE

17

18

19

20

21

22

23

24

25