UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,  :
  :
    v.  :  **MEMORANDUM & ORDER**
  :  15-CR-95-4 (WFK)
DILKHAYOT KASIMOV,  :
  :
    Defendant.  :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On September 24, 2019, Dilkhayot Kasimov ("Defendant") was convicted by a jury of Counts One and Two of the Third Superseding Indictment, charging him with conspiracy and attempt to provide material support to a foreign terrorist organization. The Court denies Defendant's post-trial motions under Fed. R. Crim. P. 29 and 33, and sentences him, providing here a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is sentenced to 180 months of imprisonment, 10 years of supervised release with special conditions, and the mandatory $200.00 special assessment.

## BACKGROUND

On May 9, 2016, the Government filed a Third Superseding Indictment, charging Defendant with (1) Conspiracy to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1), and (2) Attempt to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1). Third Superseding Indictment, ECF No. 135. On September 24, 2019, Defendant was convicted by a jury of his peers of Counts One and Two of the Third Superseding Indictment. Jury Verdict, ECF No. 425.

On December 2, 2019, the Defendant filed a motion to dismiss the Indictment or, in the alternative, for acquittal or for a new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. *See* ECF No. 428 ("Def. Mot."). The motion was fully briefed on January 27, 2020. *See* ECF Nos. 444 ("Gov't Opp."), 447 ("Def. Reply").

1

## DISCUSSION

I. **Pending Post-Trial Motions**

The Defendant sought to dismiss the Indictment because of an alleged error in the Government's presentation to the grand jury which occurred in April of 2015. Def. Mot. at 6–9. The alleged error related to certain text messages between the Defendant and a female associate (hereinafter, "Associate A"). *Id.* The Government presented these text messages to the Grand Jury along with extensive collections of other inculpatory evidence. Gov't Mem. at 7–9, 17–18. The Court finds there was no error in the presentation of those text messages to the Grand Jury, and certainly no knowing and intentional misconduct as alleged by the Defendant. Moreover, the Government did not offer a single bit of evidence of those text messages with Associate A at trial. *See id.* at 18. The complained-of text messages did not, and indeed could not have played any role in the petit jury's verdict of guilty because the petit jury did not learn of their existence. The law is well settled: the trial verdict of guilty remedies any possible defects in the Grand Jury Indictment in this case. *See United States v. Lombardozzi*, 491 F.3d 61, 80 (2d Cir. 2007) (citing *United States v. Mechanik*, 475 U.S. 66, 72–73 (1986)).

The Defendant's claim of actual innocence and that the Government failed to adduce sufficient evidence at trial of his intent to join the charged conspiracy lacks merit. The Government's proof at trial was extensive and included recorded phone calls made by the Defendant, text messages sent by the Defendant and the testimony of a cooperating witness whom the jury believed: the Government presented evidence at trial that was more than sufficient for the jury to find this Defendant guilty beyond a reasonable doubt. The evidence at trial demonstrated beyond a reasonable doubt that this Defendant in fact willingly joined and systematically operated as a willing member of the conspiracy. The Court reaches this

conclusion without any consideration of any alleged proffer agreement with the Government, a proffer agreement that was certainly never presented to the jury in this case.

In *United States v. Walters*, 910 F. 3d 11, 26 (2d Cir. 2018), the United States Court of Appeals for the Second Circuit held "the exercise of a court's supervisory authority to dismiss an indictment is a drastic remedy to be utilized with caution and only in extreme cases." As the Second Circuit made clear in *United States v. Hogan*, 712 F. 2d, 757, 761 (2d Cir. 1983), dismissal of an indictment is warranted either "to eliminate prejudice to a defendant," or "to prevent prosecutorial impairment of the grand jury's independent role." Neither occurred in this case. There is no basis for granting this Defendant a new trial under Rule 29 or Rule 33 of the Federal Rules of Criminal Procedure. The Court denies those motions.

## II. Sentencing

The Court now hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

### A. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, No. 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### B. Analysis

#### 1. The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### a. Family and Personal Background

Defendant was born on March 9, 1988 in Tashkent, Uzbekistan, as one of four children born to Shukhrat Kasimov and Feruza Kasimova. *See* Presentence Investigation Report ("PSR") ¶¶ 56, 58, ECF No. 461. Defendant's parents and siblings reside in Uzbekistan. *Id.* ¶ 57. His father and siblings are aware of his conviction and remain supportive of him. *Id.* Defendant has not informed his mother of his conviction because he fears the news would upset her health. *Id.* Defendant reported his parents earned meager wages but that his family was always able to provide him with basic necessities in terms of food, clothing, and shelter. *Id.* ¶ 58. Defendant stated his only negative childhood experience involved him being caught trespassing in his hometown and being locked by police in a basement bathroom for several hours. *Id.* Defendant also mentioned he was the victim of sexual abuse at a later point in his life, and noted he presently suffers from symptoms of post-traumatic stress as a result. *Id.*

In 2012, at the age of 24, Defendant left Uzbekistan for the United States on a business trip to an information technology conference in New York. *Id.* ¶ 60. While on this trip, Defendant applied for a student visa to extend his stay and has remained in the United States since. *Id.* United States Immigration and Customs Enforcement ("ICE") records indicate Defendant has no legal status in this country and is subject to deportation pursuant to the instant case. *Id.* ICE records further reflect that an immigration detainer has been filed against Defendant and remains active. *Id.*

Between 2012 and 2013, Defendant resided with his cousin in Philadelphia, Pennsylvania. *Id.* ¶ 61. Defendant's cousin is his sole contact in the United States, is aware of Defendant's conviction, and remains supportive of Defendant. *Id.*

In 2013, Defendant moved to Brooklyn, New York and resided alone in Brooklyn until his arrest in this case. *Id.* ¶ 62.

b. Educational and Employment History

Defendant attended Tashkent University of Information Technology between 2008 and 2011 and earned the equivalent of a Bachelor of Science degree in information technology. *Id.* ¶ 68. Defendant also attended English as a Second Language classes in Philadelphia in 2012. *Id.* Defendant reported he earned good grades and had no disciplinary issues in school. *Id.*

Defendant worked primarily as a freelance computer repair technician between his arrival in the United States in June 2012 and his February 25, 2015 arrest. *Id.* ¶ 70. Defendant also worked as a full-time driver for a ride-share company in Brooklyn between January 2015 and February 25, 2015. *Id.* ¶ 71. Between 2013 and 2015, Defendant also worked as a part-time delivery person at Istanbul Restaurant in Brooklyn, New York. *Id.* ¶ 72. From June 2012 to 2013, Defendant worked as a shop assistant at New Image Picture Framing in Philadelphia,

Pennsylvania, a store owned by a family friend. *Id.* ¶ 74. Between November 2011 and June 2012, Defendant worked part-time as an information technology specialist at Turin Polytechnic University in Uzbekistan. *Id.* From 2008 to 2012, Defendant was a full-time salesperson at an electronics retail store in Uzbekistan. *Id.* Between 2006 and 2008, Defendant worked at a state-sponsored broadcasting company in Uzbekistan. *Id.* Prior to 2006, Defendant was enrolled in school and was supported by his family. *Id.*

Defendant has remained in federal custody since his arrest on February 25, 2015. *Id.* ¶ 63. While in custody, he has worked as a unit orderly, and has participated in health education, resume, tutoring, critical thinking, and math programs. *Id.* He has incurred no disciplinary infractions while in custody. *Id.*

   c. <u>Prior Convictions</u>

Defendant has no prior convictions.

   d. <u>Medical and Mental Health</u>

Defendant suffers from sinus infections, as well as a recurring skin rash on his knee and foot. *Id.* ¶ 65. According to his cousin, Defendant also has a history of respiratory illness. *Id.*

Defendant reported he suffers from post-traumatic stress as a result of sexual abuse he has suffered. *Id.* ¶ 66. Defendant has incorporated a workout routine to his daily regimen to relieve stress and anxiety, and described his current mental health as otherwise stable, reporting he experiences no suicidal ideation. *Id.*

   e. <u>Substance Abuse</u>

Defendant reported he has never used illicit substances or abused alcohol. *Id.* ¶ 67.

   f. <u>Nature and Circumstances of the Offense</u>

The investigation in this case began in August 2014, when agents with the Federal Bureau of Investigation ("FBI") Joint Terrorism Task Force interviewed a co-defendant, Abdurasul Juraboev, following their discovery of a social media post pledging support for the Islamic State of Iraq and Syria ("ISIS"). PSR ¶ 8. In a series of interviews, Juraboev expressed his support for ISIS, desire to travel to Syria to fight with ISIS, intention to kill then-President Barack Obama, and plan to plant a bomb in the Coney Island section of Brooklyn. *Id.* Juraboev and another co-defendant, Akhror Saidakhmetov had discussed engaging in terrorist acts in the United States, as well as traveling to Syria to fight with ISIS. *Id.* The investigation also revealed the involvement of co-defendant Abror Habibov, who was Saidakhmetov's employer, helped to purchase and plan Saidakhmetov's plane ticket to Turkey and subsequent travel to Syria, and raised money to support Saidakhmetov's actions in Syria. PSR ¶ 9.

Throughout late 2014 and early 2015, Juraboev and Saidakhmetov communicated with ISIS representatives, and with the assistance of Habibov, planned to travel to Syria to fight with ISIS. *Id.* ¶¶ 10–18.

On February 25, 2015, the day before Saidakhmetov's flight, Habibov contacted the Defendant to ask for a contribution to fund Saidakhmetov's travel and expenses in Syria. *Id.* ¶ 24. Defendant offered to contribute $1,000.00, and later contributed $500.00. *Id.* Defendant also volunteered to drive Saidakhmetov to John F. Kennedy International Airport ("JFK airport") and ultimately transported his contribution and the other funds raised, totaling $1,600.00, to Saidakhmetov at the airport. *Id.* On the day of Saidakhmetov's flight, Defendant drove to JFK airport, illegally parked his car in front of the terminal, and brought the $1,600.00 to Saidakhmetov, who was waiting inside the terminal. *Id.* Defendant then moved his car to another parking spot, returned to the terminal, and waited with Saidakhmetov. *Id.* Defendant

departed when Saidakhmetov left to board his flight, at which time Saidakhmetov was arrested. Gov't Mem. at 5, ECF No. 513.

Defendant was detained by federal officials on immigration charges on February 25, 2015. PSR ¶ 26. In post-arrest statements, Defendant admitted he had delivered the money seized from Saidakhmetov and stated his belief that Saidakhmetov "might be" traveling to Syria to join ISIS. *Id.*

### 2. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of the Defendant's offense, which involved support for a designated foreign terrorist organization and implicates national security concerns. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his offense.

### 3. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant was convicted by a jury of Conspiracy to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1), and Attempting to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. §

2339B(a)(1). For these offenses, Defendant faces a maximum term of imprisonment of thirty years, the maximum under the statute at the time of the offense conduct. *See* 18 U.S.C. § 2339B(a)(1). Defendant also faces a maximum term of supervised release of life on each count. 18 U.S.C. §§ 3583(b)(2), 3583(j).

A term of not less than one nor more than five years of probation is also available, because the instance offense is a Class C Felony. 18 U.S.C. § 3561(c)(1). If probation is imposed, a fine, restitution, or community service must also be imposed as a condition of probation unless the Court finds that extraordinary circumstances exist that would make such a condition plainly unreasonable. 18 U.S.C. § 3563(a)(2).

Defendant also faces a maximum fine of $250,000.00 as to each count under 18 U.S.C. § 3571(b).

### 4. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The applicable guideline for 18 U.S.C. § 2339B(a)(l) offenses is United States Sentencing Guideline ("USSG" or "Guideline") § 2M5.3(a), which provides for a base offense level of 26.

Because the instant offense involved the provision of material support with the intent, knowledge, or reason to believe such support would be used to commit or to assist in the commission of a violent act, a two-level increase is warranted pursuant to USSG § 2M5.3(b)(1)(E). This enhancement applies because Defendant provided the funds knowing

Saidakhmetov was traveling to Syria and intended to join and fight for ISIS, a violent terrorist organization, and therefore, Defendant knew or had reason to believe that his act of providing funding to send a fighter to ISIS would be used to commit or to assist in the commission of a violent act.

As the instant offense is a felony that involved, or was intended to promote, a federal crime of terrorism, a 12-level increase is applicable, pursuant to USSG § 3A1.4. By reference in the § 3A1.4 application notes to 18 U.S.C. § 2332b(g)(5), a "federal crime of terrorism" is defined as an offense that "(A) is calculated to influence or to affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and (B) is a violation of . . . 2339B (relating to providing material support to terrorist organizations) . . . ." The enhancement is thus warranted because the evidence at trial proves by a preponderance that Defendant gave money to Saidakhmetov knowing that Saidakhmetov was traveling to Syria to join and fight for ISIS. *See also United States v. Awan*, 607 F.3d 306, 314 (2d Cir. 2010) (applying § 3A1.4 where the defendant knew the objective of the foreign terrorist organization was to influence a government through violence and knew the money he provided would be used to that end, even though he may not have been personally motivated by that objective). Accordingly, Defendant's adjusted offense level is 40.

The Defendant has no prior convictions. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I. However, the criminal history category is VI pursuant to USSG § 3A1.4(b), which states that "the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI."

Based upon a total offense level of 40 and a criminal history category of VI, the Guidelines imprisonment range is 360 months to life. However, the statutorily authorized maximum sentence is less than the maximum of the applicable guideline range; therefore, the restricted Guidelines range is 180 months of incarceration as to each count. USSG § 5G1.2.

Probation recommends a sentence of 360 months of incarceration followed by 10 years of supervised release with special conditions. The Government recommends a sentence of 240 months of incarceration, followed by 10 years of supervised release if Defendant is not removed following his custodial term. Defense counsel recommends a below-guidelines sentence. The Defendant filed a pro se submission requesting a sentence of time served.

### 5. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), does not apply here.

### 6. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Co-defendant Abdurasul Hasanovich Juraboev pleaded guilty to one count of Conspiracy to Provide Material Support to a Foreign Terrorist Organization in violation of 18 U.S.C. § 2339B(a)(1) and was sentenced by this Court on October 27, 2017 to 180 months of incarceration, with no term of supervision to follow. *See* ECF No. 252. Co-defendant Akhror Saidakhmetov pleaded guilty to one count of Conspiracy to Provide Material Support to a Foreign Terrorist Organization in violation of 18 U.S.C. § 2339B(a)(1) and was sentenced by

this Court on December 20, 2017 to 180 months of incarceration, with no term of supervision to follow. *See* ECF No. 263. Co-defendant Azizjon Rakhmatov pleaded guilty to one count of Conspiracy to Provide Material Support to a Foreign Terrorist Organization in violation of 18 U.S.C. § 2339B(a)(1) and was sentenced by this Court on January 14, 2021 to 150 months of incarceration, followed by a lifetime term of supervised release with special conditions. *See* ECF No. 486. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### 7. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). This factor does not apply here.

## CONCLUSION

Scripture tells of a just employer who needed additional workers to harvest his crops just ahead of an unanticipated fast-moving frost. He went to the village hiring square at dawn and hired all the workers available at the traditional, fairly agreed upon per diem rate of compensation. As dusk approached the employer saw he needed more workers to beat the frost so he went back to the hiring square and hired all the additional workers available at the same daily rate. When the day ended with the harvest successfully completed, the employer thanked the workers as he paid each of them the agreed upon wage. The workers whom he had hired at the end of the day said thank you, but the workers he had hired at dawn complained they had been treated unfairly: they said they should now be paid more because they had worked longer and harder through the heat of the day. The employer acknowledged the first set of workers had indeed worked through the heat of the day and for more hours but reminded them they had

agreed to the fair per diem wage as had those workers whom he had hired at dusk. He said it would not be fair to renegotiate the fairly agreed upon compensation to either set of workers: a fair deal at dawn is a fair deal at dusk.

Our Constitution and laws set forth the fair range of punishments upon proof of guilt beyond a reasonable doubt, whether guilt is established by way of a guilty plea in the early dawn of a case or by way of a guilty jury verdict at the end of a case. While this Court is aware some believe "the first one to the table gets lunch, the last one to the table is lunch," our Constitution and laws wisely refute that concept: to impose the so called "trial penalty" is to invite the cannibalization of our right to trial. This Court declines to dine at that table. Guilty pleas and prosecutorial efficiency play important roles as servants in the administration of justice; but guilty pleas and prosecutorial efficiency must never be allowed to assume the dominant role of masters in the administration of justice.

The Court finds that a sentence of 180 months of incarceration as to both counts, with each sentence running concurrently pursuant to USSG § 5G1.2(c), for a total of 180 months of incarceration, followed by 10 years of supervised release with special conditions, is appropriate. The Court also imposes the $200.00 mandatory special assessment, but does not impose a fine because the Defendant does not have the ability to pay. This sentence is consistent with and is sufficient but not greater than necessary to accomplish the purposes of § 3553. The Court also expressly adopts the factual findings of the Presentence Investigation Report and any addenda thereto, barring any errors contained therein and to the extent they are not inconsistent with the Court's sentence.

SO ORDERED.

s/WFK

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 6, 2022
       Brooklyn, New York